[Sac. No. 353.    Department Two.—January 18, 1898.]

EDWARD FALLTRICK, Appellant, v. P. SULLIVAN, Respondent.

ELECTION CONTEST—POWER OF ADJOURNMENT OF SPECIAL SESSION—PRIOR ENGAGEMENT OF COURT—JURISDICTION.—Section 1120 of the Code of Civil Procedure is not to be construed as limiting the power of adjournment by the court of a special session ordered for the trial of an election contest, merely from day to day or upon good cause shown by either party, not exceeding twenty days; but the court has power of its own motion to adjourn the session for several days, on account of a prior engagement of the court rendering such adjournment necessary, and the court does not lose jurisdiction to try the contest on account of such adjournment.

ID.—ILLEGAL VOTES—INSUFFICIENT REGISTRATION.—Votes cast at an election for school trustees of persons whose names had not been enrolled upon the great register of the county fifteen days prior to the election are illegal, and must be rejected in determining an election contest.

ID.—OATH AS TO QUALIFICATION—CONSTRUCTION OF CODE.—The fact that section 1600 of the Political Code, which provides for the reception of a vote upon the voter taking the oath prescribed by that section, was not amended so as to conform to the amendment of 1893 to section 1083, requiring registration of the voter fifteen days prior to an election, does not determine the legality of the vote cast by the one who has taken the oath.

ID.—CANCELLATION OF GREAT REGISTER—JURISDICTION OF SUPERVISORS.—The great register of a county must remain for all purposes required by law before the completion of a new register; and the board of supervisors have no authority to declare the old register canceled before the registration of the new register is complete.

APPEAL from a judgment of the Superior Court of Sacramento County.    A. P. Catlin, Judge.

The facts are stated in the opinion.

Holl & Dunn, for Appellant.

C. T. Jones, and C. P. Kearney, for Respondent.

HAYNES, C.—Plaintiff, an elector, contested the election of defendant to the office of trustee of American River school district, in the county of Sacramento, and sought to have it adjudged that B. Feraut was elected to said office. The defendant had judgment, and plaintiff appeals therefrom. The evidence is brought up by bill of exceptions.

This proceeding was brought under the provisions of the Code of Civil Procedure entitled, "Of contesting certain elections." The bill of exceptions shows that said contest came on regularly for trial on July 8, 1896, and the trial was proceeded with on that day and the day following, when the court, on its own motion, continued the further hearing of the case until July 14th; that no motion or affidavit for such continuance was made by either party; that it was made without objection, after consultation with the attorneys of both parties, and to a day agreeable to them, and was made because of another engagement of the court, and the trial was proceeded with and concluded on the 14th without objection or exception by either party; and it is now contended by respondent that the court lost jurisdiction of the cause by said adjournment.

Section 1118 of the Code of Civil Procedure requires the court, upon the statement of contest being filed, to "order a special session" of the court to be held on a day named, not less than ten nor more than twenty days from the date of such order, to hear and determine such contest.

Section 1121 of the Code of Civil Procedure is as follows: "The court must meet at the time and place designated, to determine such contested election, and shall have all the powers necessary to the determination thereof. It may adjourn from day to day until such trial is ended, and may also continue the trial, before its commencement, for any time not exceeding twenty days, for good cause shown by either party upon affidavit, at the costs of the party applying for such continuance."

In support of his contention respondent cites *Keller v. Chapman,* 34 Cal. 640; *Norwood v. Kenfield,* 34 Cal. 332; *English v. Dickey,* 128 Ind. 174; McCrary on Elections, sec. 421.

In *Keller v. Chapman, supra,* after the trial had progressed for two days, the court, on contestant's motion, and against defendant's objection, adjourned further proceedings therein for seven days. The grounds upon which the continuance was granted do not appear. The court said: "The summary nature of the proceeding is inconsistent with the exercise of the general discretionary power of granting continuances possessed by courts in civil actions. The expression of the particular mode and time of continuance is conclusive of all nonenumerated modes and

times. The continuance from the 6th of the month, when the case was on trial, to the 13th of the same month, against the objections of the respondent and without an affidavit showing cause, was unauthorized, and operates as a discontinuance of the proceeding."

The court was there dealing with the question of "the general discretionary power of the court to grant continuances" where no cause was shown by affidavit, and held that no such power existed except as to the continuances provided for in the statute. Here the continuance was not made at the instance of either party, but was made by the court because of another engagement "of the court," and without objection from either party. It was not, as we must assume, another engagement of the Hon. A. P. Catlin, as an individual, but of the court, and we are bound to assume that it was imperative, and fully justified the continuance, if a continuance could be ordered for any cause otherwise than from day to day.

The next case cited (*Norwood v. Kenfield, supra*) involved a radically different question. Under the judicial system then prevailing there were "terms" of court, and except during the terms there was no court, and the judge could perform no judicial act except those authorized by statute. In that case, after the order fixing the day for the special term, the judge, in vacation, and before the day fixed for the commencement of the special term, continued the trial to a later day, on which day the defendant appeared and objected to the jurisdiction of the court, upon the ground that the county judge had no authority at chambers to make the order continuing the case. This objection was overruled. The supreme court held that "there was no *term* in existence at which a trial could be had, and the whole proceeding was a nullity"; that the court did not meet at the time designated, and until the special term commenced there was no power to order the cause adjourned to another day. The question as to the power of the court to adjourn the hearing after the trial commenced was not involved. In the case now before us no question arises as to "terms" of court, nor as to the constant existence of the court. By the provisions of the constitution the superior courts are always open, the intervals in which no business is transacted being regarded as recesses, and

by "sessions" is meant the time during which the court is in fact engaged in business as a court (Const., art. VI, sec. 5; Code Civ. Proc., secs. 73, 74; *In re Gannon*, 69 Cal. 544, 545); and accordingly section 1118 of the Code of Civil Procedure directs that "the superior court"—not the judge—"shall order a special *session* of such court to be held," etc. The "court," therefore, did not cease to exist, as such, by the continuance of the cause, leaving only the question as to whether the court lost jurisdiction of the case; in other words, whether the court, its existence as a court being unaffected, can, for sufficient cause, adjourn the hearing, after it is commenced, otherwise than from day to day.

The statute contemplates a prompt and speedy determination of election contests; but it cannot be presumed that the legislature intended that under no circumstances, however essential to the administration of justice, and especially in a matter in which the public as well as the parties have an interest, could an adjournment be had otherwise than from day to day. Contingencies might be readily imagined where, without the fault of the court or of either party, an interruption of several days would be unavoidable.

The case of *Lord v. Dunster*, 79 Cal. 477, 486, is an illustration; though there the continuance was asked on December 31st to January 2d, which was in effect but one day, the first being a holiday. The purpose for which the continuance was asked, the showing made in support of it, the fact that the motion was made after the submission of the case, though before the decision was announced, and the spirit and scope of the decision, all tend strongly to support my conclusion in this case that the court did not lose jurisdiction. The facts in *Lord v. Dunster, supra*, in my judgment, would have required the same judgment in this court if the time required to produce the witnesses had made a longer continuance necessary.

In this case we are justified in assuming that the prior engagements of the court were at the least as imperative as the requirements of the statute under consideration, and that it was not intended that where the inability of the court to proceed with the case makes a continuance for several days necessary, that the court should lose jurisdiction. The statute declares that the court "shall have all the powers necessary to the determination

thereof." (Code Civ. Proc., sec. 1121. See, also, the concluding paragraph of *Minor v. Kidder*, 43 Cal. 229.)

Appellant contends that the judgment should be reversed because the evidence is insufficient to justify certain findings.

The court found that forty-three votes were cast and counted for the defendant, P. Sullivan, and that forty-two votes were cast and counted for B. Feraut; and that no illegal votes were cast for Sullivan, and confirmed his election.

Appellant contends that the evidence shows that Dominico Sorrocco, Raffelo Cassello, Julian Feraut, John Inderkum, and W. J. Donahue voted at said election for Sullivan, and that none of them were entitled to vote.

That each of said five persons voted is not questioned, but respondent contends that there is a conflict in the evidence as to the person for whom they voted. We see no conflict, however. Inderkum identified his ballot, and it bore Sullivan's name and was counted for him. The printed tickets all bore Sullivan's name, and were red or pink in color. Feraut's tickets were written on common white paper. The evidence is satisfactory and uncontradicted that none but white tickets were voted for Feraut, that all red tickets were voted for Sullivan, and in addition some white ones; and there was positive testimony that each of the five voted a red ticket, and no witness testified to the contrary. Inderkum and Donahue were both examined as witnesses on the part of the defendant, but no effort was made to show that they did not vote for Sullivan.

The ground upon which appellant claims they were not entitled to vote is that they were not enrolled on the great register of voters fifteen days before the election. As to this fact, also, there is no controversy.

Section 1083 of the Political Code, as it stood before the amendment of 1893, simply required that the name of the voter "shall be enrolled on the great register of the county." This provision was amended in 1893 by adding the words, "fifteen days prior to an election." (Stats. 1893, p. 124.)

Under the title, "Election for School Trustees," the Political Code, section 1598, provides: "Every qualified elector of the county, who has resided in the district for thirty days next preceding an election, may vote thereat."

Under these provisions, it is clear that, if the five persons above named were not qualified electors of the county, they were not entitled to vote for school trustees, enrollment on the great register fifteen days before an election being essential.

But it is claimed by respondent that section 1600 of the Political Code modifies this requirement as to registration.

That section prescribes the oath to be administered to a person whose right to vote for school trustees is challenged, and as to registration provides as follows: "And that your name is on the great register of this county"; and said section further provides: "If he takes the oath prescribed in this section, his vote must be received, otherwise his vote must be rejected."

This section, as it now stands, was enacted in 1880, and has not been amended to conform to section 1083 as amended in 1893, and which prescribes the qualifications of voters "at any and all elections held within the county, city, town, or district within which such elector resides"; and all the qualifications specified in that section, including that of enrollment on the great register fifteen days before an election, are imported into section 1598 relating to the election of school trustees.

But section 1600, prescribing the oath to be taken by a person whose vote is challenged, does not determine the legality of a vote cast by one who has taken the oath. It prescribes a summary mode of determining whether the vote shall be received, and does not determine its legality for any other purpose, else one who had willfully and for a fraudulent purpose sworn falsely would thereby become in effect a legal voter, and no contest against one elected by such votes could possibly succeed. There is no provision of the statute giving the oath any other effect than that of determining the duty of the board to receive the vote. Though the challenger may know that the oath is false, and be able to prove it at the time, the vote must nevertheless be received, as otherwise the whole time of the board might be occupied with trials of challenges, and qualified voters be thereby deprived of all opportunity to vote.

Respondent calls attention to the fact that this election was held on June 5, 1896, that on May 29th, nine days before the election, the board of supervisors canceled the great register; that these five persons were registered between the 1st and 4th of

June, and argues that, if appellant's contention is sound, there were no qualified electors in the district at the time the election was held.

There is nothing in this contention. It is true the county clerk testified that the great register was "canceled" on May 27th, but he evidently testified to a mere conclusion of law. The statute makes no provision for canceling the old register before commencing a new one. Section 1094 of the Political Code (Stats. 1895, p. 228), provides, among other things, that in those counties where registration is not required previous to each general election, a new and complete registration of the voters of such counties shall be made, "when required by the board of supervisors. . . . . Such registration shall commence one hundred and sixty days before a general election and continue for seventy-five days thence next ensuing, when said registration shall cease."

School trustees are required to be elected annually on the first Friday in June, and it is obvious that the old register must remain for all purposes required by law before the completion of the new register, and the board of supervisors have no authority to declare it canceled before the registration is completed. It should be added that the five persons alleged to have voted illegally for respondent were not enrolled upon the great register alleged to have been canceled, and that Cassello's name was not in fact enrolled upon the register at any time, the clerk having subsequently refused to enter it, upon the ground that he was not qualified, though he gave him a certificate of registration at the time of his application to register. But the only certificate authorized by the statute is a "certified copy of the entries upon the great register relating to such party." (Pol. Code, sec. 1107.)

One ballot was cast upon which the name of P. Sullivan was printed and the name "John Inderkum" was written in ink about an inch below the printed name, which was not erased. This ballot was counted for Sullivan by the election board and also by the court. The evidence shows that this ballot was cast by Inderkum, and, as he was not entitled to vote for want of timely registration, what construction the law would place upon such ballot need not be considered.

The judgment should be reversed and the cause remanded for further proceedings.

. Chipman, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, and the cause remanded for further proceedings.

Henshaw, J., Temple, J., McFarland, J.