WATSON *ET AL.* v. SPARTANBURG COUNTY BOARD OF EDUCATION

(139 S. E., 775)

1. ELECTIONS—"QUALIFIED ELECTOR" IS CITIZEN POSSESSING CONSTITUTIONAL QUALIFICATIONS, WHO HAS BEEN DULY REGISTERED; WHEREAS, "QUALIFIED VOTER" IS QUALIFIED ELECTOR WHO HAS PAID HIS TAXES.—A "qualified elector" is a citizen of the State, male or female, 21 years of age or more, possessing qualifications required by Constitution, duly registered, and not under disability; while a "qualified voter" is a person who is not only a qualified registered elector, but who has met the additional requirement, imposed by Constitution and statute law, of payment of all taxes assessed against him and collectible during the previous year.

2. SCHOOLS AND SCHOOL DISTRICTS—PERSONS SIGNING PETITION OPPOSING CONSOLIDATION OF SCHOOL DISTRICT HELD "QUALIFIED VOTERS" OF DISTRICT WITHIN STATUTE, THOUGH REGISTERED OUTSIDE OF DISTRICT (CIV. CODE, 1922, §§ 219, 230, 2599; CONST. ART. 2, § 4, SUBD. [A]).—Where persons signing petition under Civ. Code, 1922, § 2599, opposing consolidation of school district, resided within the district but were registered at polling places outside of the district but within the same polling precinct, *held*, such persons were "quali-

fied voters" within the statute, notwithstanding registration outside the district, in view of Civ. Code, 1922, §§ 219, 230, and Const. Art. 2, § 4, Subd. (a).

3. SCHOOLS AND SCHOOL DISTRICTS—HIGH SCHOOL DISTRICT CANNOT BE CREATED AGAINST WILL OF TRUSTEES OF COMMON SCHOOL DISTRICT EMBRACED THEREIN (HIGH SCHOOL ACT).—Under High School Act (Civ. Code, 1922, §§ 2716-2738), a high school district cannot be created against the will of trustees of the common school district to be embraced therein.

In the original jurisdiction. Reversed.

Original petition by R. L. Watson and others, as Trustees of Hobbysville School District No. 88, and others, for a writ of *certiorari* to review action of State Board of Education affirming action of Spartanburg County Board of Education granting petition for consideration of Hobbysville District with Cross Anchor District. Orders reversed.

*Mr. R. B. Paslay,* for appellants, cites: *Distinction between qualified voters and qualified electors:* 120 S. C., 135; 125 S. E., 32. Sec. 2599, Code, *in so far as it relates to the consolidation of school districts, deals with qualified voters and not qualified electors.* Section 219, *Code, should be construed in connection with* Sec 230. *Object of elections is to obtain the will of the people:* 76 S. C., 588; 133 S. C., 183. *State Board of Education cannot delegate a member of its body to make an independent investigation of the question before it:* 119 S. C., 23.

*Messrs. Nicholls, Wyche & Byrnes,* for respondents.

October 7, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

Hobbysville School District No. 88 and Cross Anchor School District No. 15 are both located in Cross Anchor township, Spartanburg County. In that township there are three voting places, Hobbysville, Cross Anchor, and Enoree. On or about October 1, 1925, certain residents of the

Hobbysville District filed a petition with the County Board of Education for Spartanburg County, requesting the consolidation of that district with the Cross Anchor District. This petition was resisted by the trustees and certain other residents of the Hobbysville District, who filed a counter petition. A petition was also filed by residents of the Cross Anchor District asking for the consolidation of the two districts. On October 9, 1925, the matter was heard by the County Board of Education, who ordered the consolidation. On petition, the board granted a rehearing, which was held November 9, 1925. At this hearing the lists of petitioners were revised, and on December 1, 1925, the board passed an order reaffirming its former action, and holding that there was a total of 58 qualified voters in the Hobbysville District; that 22 of that number had signed the petition requesting the consolidation; and that this number, being more than one-third of the qualified voters of the district, was a compliance with the law in that respect for consolidation. An appeal was taken to the State Board of Education, which, August, 1926, affirmed the action of the County Board. The matter now comes before this Court on a writ of *certiorari*.

The petitioners to this Court assign error on various grounds, but under our view of the case, we need consider only the error imputed to the State Board of Education, in affirming the findings and holdings of the County Board that there were only 58 qualified voters in Hobbysville School District, and that the 22 qualified voters of the district who signed the petition for consolidation were more than one-third of the qualified voters thereof. The question presented, then, for our consideration is, Who were, at the time of the filing of the petitions, "qualified voters" of the Hobbysville School District, with the right to act as such for the purposes named in Section 2599, Code 3 of 1922, which provides that—

"No school district shall be consolidated except upon a petition of at least one-third of the qualified voters of the school district proposed to be consolidated."

The distinction between "qualified electors" and "qualified voters" is defined in the case of *State v. Mittle,* 120 S. C., 526; 113 S. E., 335, in which it is pointed out that "a qualified elector is a citizen, male or female, of the State, 21 years of age and upwards, not laboring under the disabilities named in the Constitution and possessing the qualifications required by it," and who has been duly registered by the County Board of Registration; while a "qualified voter" is a person who is not only a qualified registered elector, but who has met the additional requirement, imposed by the Constitution and the statute law, of the payment of all taxes assessed against him and collectible during the previous year.   See, also, *Abernathy v. Wolfe,* 117 S. C., 545; 109 S. E., 275.

It appears, however, that the County Board of Education, whose findings and holdings were confirmed by the State Board of Education, reached the conclusion that certain citizens residing in the Hobbysville School District, registered at either Cross Anchor or Enoree, outside of the district but within the polling precinct, were not qualified voters of that district, by reason of the fact that they had removed from one part of the district to another, thus bringing their residences nearer to the Hobbysville voting place within the district than to either of the other voting places at which they were registered, and had failed to secure registration certificates to vote at the Hobbysville voting place.   It is not contended that any one of the 13 residents of Hobbysville District disqualified by the board was not registered at either the Cross Anchor or the Enoree voting place, or had not paid his taxes; the only ground on which disqualification was based being that above indicated.

Article 2, § 4, of the Constitution, in the matter of qualification for suffrage, as to residence, provides:

"(a) Residence in the State for two years, in the County one year, in the *polling precinct* in which the elector offers to vote four months." (Italics ours.)

As to what constitutes "polling precincts," Section 230, Code 3, 1922, provides:

"Each township as now. or hereafter laid out and defined in the several counties of this State, and in those counties where there are no such townships, the parish as formerly known and defined, is declared a polling precinct."

In that same Section we also find the following provision:

"The voting places within these polling precincts shall be the same as now or hereafter established by law: Provided, when there are more than one voting place in the polling precincts the electors for that precinct can vote at either polling place, to be designated on his certificate of registration by board of registration or supervisor of registration."

It is to be noted that (1) the township or parish is the polling precinct, (2) therein may be established a number of voting places, and (3) where there is more than one voting place in a polling precinct the electors of such polling precinct may vote at either voting place, as designated by the board or supervisor of registration on the voter's certificate.

Section 219, Code 3, 1922, provides: (1) That every voter shall vote at the polling or voting place in the polling precinct (which may be a township) where his registration certificate entitles him to vote; (2) that in case an elector shall move from one polling precinct to another in the same County, if he desires to vote, he is required to surrender his old certificate and obtain a new one, etc. But it is to be noted that the section provides that where one voting place has been changed to another in the same township or polling precinct, or the name of the voting place has been changed, the registration at the old voting place is effectual for the new. Also, a registered elector has the option to change his voting place within a polling precinct to a voting place

therein which may be nearer his residence, although he is not required to do so.

Construing Sections 219 and 230 together, it is clear that qualified voters of Cross Anchor township may vote at any one of its three voting places, as designated by such qualified voter's registration certificate. The fact that a voting place is located by law in Hobbysville School District does not mean that a resident of that district is required to register to vote at the Hobbysville voting place in order to become a qualified elector of the polling precinct or a qualified voter of the Hobbysville School District.

The County and State Boards of Education recognized this to be true, as they declared 15 signers of the petitions, who were residents of Hobbysville School District, but who were registered either at Cross Anchor or Enoree, to be qualified voters of the Hobbysville District; these having paid their taxes as required by law. In this the County and State Boards were clearly correct. However, in disqualifying, for the sole reason stated above, at least 13 citizens who were residents of the Hobbysville District, but were registered either at the Cross Anchor or the Enoree voting place in the polling precinct, and who had paid their taxes as required by law, the County and State Boards of Education were clearly in error, as there is no authority of law for disqualifying a voter for the sole reason that his voting place as designated on his registration certificate is more distant from his residence than some other voting place in the polling precinct—and this is true, as in the present case, even though he has removed from one part of the polling precinct to another part thereof within the same school district, and has thus brought his residence nearer to the voting place therein than to the one designated on his registration certificate. The County and State Boards of Education apparently fell into error through failure to discriminate between polling precinct and voting place or places within the polling precinct.

If there were no voting in Hobbysville School District, all residents of that district, registered as electors at either Cross Anchor or Enoree and who had paid their taxes as provided by law, and were not otherwise disqualified, would be qualified voters of Hobbsyville School District, with the right to act as such for the purposes named in Section 2599. The fact that there is a voting place in the Hobbysville District does not change or affect the situation.

We therefore must conclude that the 13 signers against consolidation, residents of the Hobbysville District, admitted to be registered as electors at either Cross Anchor or Enoree voting places within the polling precinct, and to have paid their taxes, should have been counted as qualified voters of the Hobbysville District; that these 13 being added to the 58 admittedly qualified voters of the district would increase the number to 73; and that, as there were only 22 qualified voters of the district who signed the petition for consolidation, such petition is signed by less than one-third of the qualified voters of Hobbysville District. In this respect the petition was insufficient, and the State Board of Education committed error in affirming the action of the County Board granting the petition for consolidation.

In view of the proceedings had for the consolidation of the districts—the filing of the petitions and other steps taken—we assume that such attempted consolidation was for common school purposes, and that, therefore the filing of a petition by one-third of the qualified voters of each of the districts as required by Section 2599 of the Code was essential. Nothing is found in the record to indicate a different purpose, except the statement in the order of the County Board of Education to the effect that a grammar school would and should be continued in the Hobbysville School District. If the County Board of Education meant by such holding that it regarded the proceeding as one for the creation of a high school district, it is only necessary to cite the case of *Hildebrand v. High School District,* 138 S.

C., 452; 136 S. E., 757, to show that, if such was the intention, the proceedings had were not such as are required for the formation of a high school district. As pointed out by Mr. Justice Blease in the *Hidebrand case,* under the "High School Act," the filing of a petition by the qualified voters of the territory intended to be consolidated is not required; "the authority to create a high school district, under the general law, is vested in the boards of trustees of common school districts proposed to be embraced therein, subject to the regulations made by the 'High School Act,' and the regulations of the State Board of Education."

It is thus made clear that if the steps taken were for the purpose of creating a high school district, the opposition of the trustees of the Hobbysville District, who actively opposed all steps taken for consolidation, would be a complete bar to such an attempt, for, as has been pointed out, the authority to create a high school district is vested, not in the County Board of Education, but in the board of trustees of the common school district sought to be incorporated as a part of the proposed high school district, subject to the regulations of the High School Act and of the State Board of Education

Under either view of the case, it is clear that the County Board of Education was without authority to order the consolidation of the districts and that the State Board of Education committed error in affirming its action.

It is unnecessary to consider the other grounds of assigned error.

The orders appealed from are reversed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.