In re INITIATIVE PETITION NO. 142, STATE QUESTION NO. 205.

No. 26718.   March 3, 1936.

**156**

William Cullen Bryant, pro se.

V. E. McInnis and Rainey, Flynn, Green & Anderson, for protestant.

S. J. Clay, amicus curiae.

RILEY, J. William Cullen Bryant appealed from a finding of the Secretary of State that Initiative Petition No. 142 was insufficient. The hearing here is de novo. In re Initiative Petition No. 23, 35 Okla. 49, 127 P. 862. By the initiative petition it is sought to submit a proposed constitutional amendment: "Authorizing counties, cities, towns, and rural utility districts to incur indebtedness for the purpose of constructing, purchasing, acquiring, improving, extending, enlarging, maintaining and operating public utilities, payable exclusively out of the revenues derived from the operation of the utilities and prohibiting the levying of an ad valorem tax for such purpose."

On July 22, 1935, proponents filed with the Secretary of State 5,510 pamphlets, purporting to bear the signatures of 109,385 qualified electors. The number of such signatures required for submission is 94,-250. Thus to sustain the finding of insufficiency 15,136 signatures must in law be proved invalid.

Protestant presents 16 propositions.

The first contention of law is: "Where circulators are paid per name secured, and their compensation is contingent upon the circulator's completed endeavor, the signatures so procured are invalid." It is alleged that each circulator was paid upon a basis of 2½ cents per name secured.

The laws applicable do not prohibit payment of reasonable compensation to such circulators, nor is there any statute declaring signatures so procured invalid. The contingency was based upon the endeavor to secure names, and it was not limited either to valid signatures, on the one hand, or on the other to adoption of the proposed constitutional amendment. According to the allegation, the circulators have been paid. The signatures so secured are not invalid for the assigned reason. In re State Question No. 138, 114 Okla. 285, 244 P. 801.

By the second proposition it is sought to invalidate the signatures secured under an allegation that the circulators were instructed by proponents to misrepresent the contents of the petition in order to procure sufficient signatures.

It is alleged that the falsely stated purpose of the petition was to reduce gas and electric rates; to extend distribution systems; for construction of the Grand River project.

The presumption is to be indulged that the signers read the instrument presented to them. Frequently there is divergency of opinion as to the result of a proposed political measure.

The alleged misrepresentations may be results designed to be accomplished by proponents of the measure and honestly stated by circulators to prospective signers. Courts cannot interfere on collateral matters with action of electors under the theory that some may have been deceived. Edwards v. Hutchinson (Wash.) 35 P. (2d) 90; State v. Sullivan (Mo.) 224 S. W. 339.

Under the third proposition it is alleged that circulators made no attempt to determine whether signers were legal voters, and thus the petitions are invalid. There is no merit in this. The ultimate question is the validity of the signatures.

Under the fourth proposition it is urged

that all pamphlets which are shown to have been forged in whole or in part by the circulators are void.

Section 5872, O. S. 1931, requires an affidavit of the circulator to be placed on each sheet containing signatures of every such petition. The substance of the affidavit is that the circulator believes that every person designated as a signer stated his name, post-office address, and residence correctly, and that each signer is a legal voter. This affidavit is required to verify the signatures. If the affidavit is willfully, corruptly, and intentionally false, it is worthless and the part or whole of the petition, as the case may be, to which it is attached is invalid as lacking the verification required by statute. In re State Question 138, 114 Okla. 285, 244 P. 801; State v. Graves, 90 Ohio St. 311, 107 N. E. 1018; Morford v. Pyle (S. D.) 220 N. W. 907; In re Referendum Petition No. 31, 68 Okla. 147, 172 P. 639.

Thus in Nebraska (Barkley et al. v. Pool, 173 N. W. 600), it was held:

"When the certificate of a circulator * * * is impeached on the ground of fraud, the probative value of such certificate is destroyed, and none of the names appearing on such petition will be counted unless affirmatively proven to be genuine."

The rule stated is sound. By requirement of law, a warning appears upon the face of each pamphlet. Section 5869, O. S. 1931. Thereby each person to whom it is presented is advised that:

"It is a felony for anyone to sign an initiative or referendum petition with any name other than his own, or knowingly to sign his name more than once for the measure, or to sign such petition when he is not a legal voter."

An honest and faithful circulator will not permit this law to be violated. The verification of a dishonest or unfaithful circulator availeth nothing. He is subject to prosecution for violation of this law. But clerical and technical errors are disregarded. Section 5892, O. S. 1931; In re Initiative Petition No. 23, 35 Okla. 49, 127 P. 862.

The affidavit to be worthless must be "willfully, corruptly, and intentionally" false. In the decision of In re State Question No. 138, 114 Okla. 285, 244 P. 801, the circulator, Miss Daugherty, testified that she certified to all of 616 signatures; only 139 were obtained as specified in the verification. A sister had procured many of the other signatures. Four hundred and seventy-seven signatures were stricken.

What is said here governs propositions 5, 6, 7, 8, and 9.

The 11th proposition is:

"Where purported signers of pamphlets appear to have been residents of cities of the first class, having a population in excess of 7,500, and to have failed to give their addresses other than to recite 'Gen Del,' 'G. D.,' or 'General Delivery,' such purported signatures are invalid. * * *"

Section 5868, O. S. 1931, provides in part:

"The form of initiative petition shall be substantially as follows: * * *
"Name _____
"Residence _____
"Post-office _____
"If in the city, street and number

"(Here follow twenty numbered lines for signatures)."

Section 5872, O. S. 1931, dealing with verification of signatures, requires an affidavit of the circulator that the signers have stated their post-office addresses and residences correctly.

Indubitably in many cities of the state there are streets without names and residences without numbers. We are not willing to strike from this petition all such corresponding signatures. But this court, speaking through Mr. Justice Phelps, In re Initiative Petition 138, 114 Okla. 285, 244 P. 801, suggested it was "the part of wisdom to include the street and house number in giving the post-office address" in such congested centers as Oklahoma City and Tulsa.

We follow the suggestion by requiring, under the statute, proper designation of street name and house number, but we shall not now extend the requirement beyond the larger cities of the state in the absence of proof of a purpose to deceive and in the absence of a showing that signers from cities, in a number sufficient to defeat the petition by reason of the omission, cannot, with due diligence, be located.

The statutes requiring correct addresses exist to prevent "corruption in making, procuring, and submitting initiative and referendum petitions" (section 8, art. 5, Const.), and in order to prevent fraud, protestants must be enabled to trace purported signers and investigate their qualifications. In re Referendum Petition, 68 Okla. 147, 172 P. 639.

The "substantial requirement" feature of section 5892, O. S. 1931, is applied in the rule stated and to the extent that proponents without means of information from

statements or knowledge of facts will not be sustained in supplying the omissions through mere "guesswork". This rule is applicable to proposition 12.

It is alleged that many circulators did not appear before the notary public, whose jurat is attached to pamphlets. Attention is called to chapter 255, S. L. 1929, p. 363 (sec. 5902, O. S. 1931), amendatory of sections 7860 and 7861, C. O. S. 1921, now authorizing notaries public to be commissioned "in this state." Suffice it to say, the certificate of a notary, including the jurat, must, in order to accomplish the purpose for which it was intended, speak the truth. The certificate is prima facie correct; the jurat imports a verity. However, the fact of nonappearance of the affiant destroys the verification.

This rule is decisive of propositions 13 and 14.

Under proposition 15, it is alleged that the circulators failed in some instances, as required by section 5872, O. S. 1931, to give their post-office addresses, or that they gave fictitious addresses in the verification.

No difficulty will be encountered in this. The circulator, as a legislative agent, is required by law to append his "signature and post-office address" to the verification. Nothing more is required—nothing less is substantial compliance.

It is lastly contended "that each and every one of said petitions fail to have been filed as required by law in that (a) no copy of the proposed initiative petition was filed with the Attorney General, and (b) that the ballot title on the copy of the initiative bill filed with the Secretary of State contained 390 words in violation of the statute requiring that the ballot title must not contain more than 100 words.

This contention is prematurely presented. Section 5875, O. S. 1931. In re Initiative Pet. No. 2, 157 Okla. 61, 10 P. (2d) 271, it was held that it was not incumbent upon proponents to file a copy of the initiative petition with the Attorney General "until it is found to be sufficient in form:" then the ballot title may be prepared in accordance with the statute.

Our labors bring us to proposition 10, which appears to present comparatively a new question of law in this jurisdiction. It is:

"A signer of the initiative petition must be a legal voter, and in order to be a legal voter such signer must be a registered voter,

as the statute is mandatory that no person shall be allowed to vote unless he is registered."

The allegation is made that a sufficient number of signers were not registered so as to invalidate the petition, if registration is a requirement of law; or a condition precedent to the signing of such an initiative petition.

Section 3, art 5, Const. of Oklahoma, enjoins the duty upon the Legislature to "make suitable provisions for carrying into effect" the provisions of the article dealing with the initiative and referendum powers reserved to the people.

A provision of law deemed suitable by the Legislature is section 5891, O. S. 1931. It reads:

"Every person who is a **qualified elector** of the state of Oklahoma may sign a petition for the referendum or for initiative **for any measure upon which he is legally entitled to vote.**"

This is a suitable provision of law; it is reasonable. So long as it stands it has the same force in law as a constitutional provision. It governs. There are two important features of this statute designating who may sign such a petition. The qualification extends to every person who is a "qualified elector" who is "legally entitled to vote" upon the measure. "Qualified electors" are defined by article 3, section 1, Constitution of Oklahoma. The section came into being in the year 1918; it reads:

"The qualified electors of this state shall be citizens of the United States, citizens of the state, including persons of Indian descent (native of the United States), who are over the age of twenty-one years, and who have resided in the state one year, in the county six months, and in the election precinct thirty days, next preceding the election at which such elector offers to vote. Provided, that no person adjudged guilty of a felony, subject to such exceptions as the Legislature may prescribe, nor any person, kept in a poorhouse at public expense, except federal, Confederate and Spanish-American ex-so'diers or sailors nor any person in a public prison, nor any idiot or lunatic, shall be entitled to register and vote." Adopted November 5, 1918.

It is worthy of note that by the amendment not only was the word "male" eliminated, but the word "register" was added in the proviso, and the section was thus harmonized and registration was recognized as a condition precedent to the exercise of the extended franchise.

Each qualified elector is entitled to regis-

ter and vote. But by virtue of section 6 of the same article, the Legislature was empowered to "provide by law for registration of electors throughout the state or in any incorporated city or town thereof." By that section a constitutional inhibition was established in these words:

"And, when it is so provided, no person shall vote at any election unless he shall have registered according to law."

In the year 1916, the Legislature exercised the grant of power (sections 5651-5671, inclusive, O. S. 1931) and the constitutional inhibition became operative. True, the Legislature may have so acted under its general legislative powers such as prevailing in state governments (section 36, art. 5, Constitution) as differentiated from the federal governmental powers.

Whether such a legislative act as exists in Oklahoma would add to a constitutional definition of "qualified electors" an additional qualification, in the absence of a constitutional grant of power and in the absence of a constitutional inhibition against voting without first registering after enactment of provisions and requirements therefor, presents "another kettle of fish," "a horse of another color," or a different proposition of law. A question of law that has vexed many courts. Under such circumstances the courts have generally held that such laws do not of themselves "add to the constitutional qualifications of voters." McCrary on Elections (4th Ed.) par. 137.

But such laws are reasonable regulations to guard against fraud and oppression and to preserve the purity of the ballot box. "Such regulations must always have been within the power of the Legislature, unless forbidden." Cooley on Const. Limitations (6th Ed.) pp. 757-8.

In a number of instances, as in this state, the Constitution expressly directs the Legislature to enact laws providing for the registration of voters as prerequisite to the exercise of their right to vote, and when, under such provision, the Legislature enacts a law providing for a reasonable, uniform, and impartial registration of voters throughout the state, this has been held to constitute a qualification which the voter must possess to entitle him to vote, just as he must possess any other qualification defined by the Constitution. See 9 R. C. L. 1038, par. 54, and cases cited in note 7.

In 20 C. J. 82, par. 55, it is said:

"When the state Constitution or a positive statute not in conflict therewith makes registration an imperative prerequisite to the right to vote, those not registered are denied that privilege, although otherwise so entitled." State v. Butts, 31 Kan. 537, 2 P. 618; Falltrick v. Sullivan, 119 Cal. 613, 51 P. 947; State v. Peter, 21 Wash. 243, 57 P. 814; McLean v. Broadhead (U. S.) Rowell Cas. Cont. El. 412.

In final analysis we are afforded this situation: The Constitution authorizes the Legislature to provide for registration and when such provision is made, the Constitution states, in effect, and in plain words that then registration shall be required in order to exercise the privilege of the ballot. "No one shall vote at any election unless he shall have registered according to law."

Our statute, section 5891, supra, authorizes only those to sign initiative petitions who are qualified electors and entitled to vote upon the measure they propose. The present tense is used. It is a felony under the law for a person who is not a legal voter to sign an initiative petition. The result is that no person may lawfully sign an initiative petition unless at the time he is registered according to law. Such is the decision in Ahrens v. Kirby, etc., (Ariz.) 37 P. (2d) 375, and by analogy such is our own decision in King v. State ex rel., 96 Okla. 297, 222 P. 960. See, also, State ex rel. Mullen v. Howell (Wash.) 184 P. 333, wherein as to nonregistered persons and persons whose registrations were canceled under the law for failure to vote, it was held:

"In either case they cannot exercise the right to petition for the initiation or reference of laws. The rule is sensible, salutary, and sound."

Also State v. Dunn (Kan.) 235 P. 132, holding, "That 'qualified electors' who may petition are those only who possess the constitutional qualifications of electors, **and who are properly registered.**" See Watson v. Spartanburg Co. Bd., etc. (S. C.) 139 S. E. 775, and the annotation on "Nonregistration as affecting one's qualification as signer of petition. * * *" 100 A. L. R. 108.

It seems to us that the words "qualified elector" joined with the phrase "upon which he is legally entitled to vote," as used in section 5891, O. S. 1931, by way of designation of those who are entitled to sign initiative or referendum petitions, amounts to the same and is synonymous with the words "legal voter" as used in section 2, art. 5, Constitution, wherein is prescribed the percentum of legal voters required to propose by petition legislative measures and amendments to the Constitution.

It further appears clearly that "legal voters" so used is in harmony and agreeable to section 6 of art. 3, Constitution, which authorizes the Legislature to provide "for the registration of electors throughout the state or in any incorporated city or town thereof." It is noteworthy that this provision of the Constitution did not allow or permit the Legislature or the courts to determine the effect of such contemplated legislation, but the Constitution, by its own words, determined the matter.

It is elementary that constitutional provisions are to be given an interpretation in accord with the understanding of the people at the time of adoption.

Was there any misunderstanding then, or is there ambiguity now, in the provision declaring the effect of registration laws? "When so provided, no person shall vote at any election unless he shall have registered according to law." We think not.

The consequence is a nonregistered person is not entitled to vote (sec. 5652, O. S. 1931), and unless a person is entitled to vote upon petition for a referendum or a petition for an initiative measure, he is not entitled to sign (section 5891, O. S. 1931).

In the decision Re Referendum Petition No. 30, etc., 71 Okla. 91, 171 P. 500, it was "assumed" that persons who signed such petitions should be registered as required by the act of 1916. The presumption was indulged that all signers were registered according to law, and this presumption was not considered as overcome by a comparison in evidence with incomplete registration returns. We now decide the assumed proposition of law. We continue the presumption, and in compliance with the request of proponents we refer the cause for the purpose of hearing evidence upon the issues of fact joined.

The Referees of this court are ordered and directed to conduct a hearing within the chambers of this court, to begin within 24 hours from and after the promulgation of this opinion and to proceed without delay to hear evidence bearing upon the issues of fact as may be controlling under the rules of laws as herein determined, and the Referees are further directed to promptly report in writing the result of the ascertainment of facts as found to exist as a result of said hearing.

McNEILL, C. J., and BUSBY, WELCH, PHELPS, and GIBSON, JJ., concur. OSBORN, V. C. J., and CORN, J., concur in part and dissent in part. BAYLESS, J., absent.

OSBORN, V. C. J. (dissenting). I concur in all of the opinion of Mr. Justice RILEY except that portion ho'ding that registration of a qualified elector is a necessary qualification for the signing of an initiative or referendum petition, from which I dissent.

Section 1 of article 3 of the Constitution prescribes the qualifications of electors. Section 6 of article 3 provides:

"In all elections by the people the vote shall be by ballot and the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot; and may, when necessary, provide by law for the registration of electors throughout the state or in any incorporated city or town thereof, and, when it is so provided, no person shall vote at any election unless he shall have registered according to law."

The Legislature did not find it necessary to carry out the grant of authority contained in section 6 by passing an act requiring registration of the qualified electors of the state until 1916. The first Legislature, pursuant to the mandatory requirements of section 3 of article 5 of the Constitution, relating to the initiative and referendum, enacted an elaborate procedure for carrying into effect the provisions thereof. (Session Laws 1907-08, ch. 44, art. 1). Neither that Legislature nor subsequent Legislatures have seen fit to provide specifically that registration shall be an essential qualification for the signing of an initiative or referendum petition. In making the requirement of registration it is my opinion that the Legislature had in mind the preservation of the purity of the ballot at general and special elections only.

It seems to be well settled that in the absence of specific constitutional authority or direction, registration of qualified electors is not one of the substantive qualifications, but the Legislature may impose such restrictions in the exercise of the police power of the state and make registration a prerequisite to the right to vote in order to prevent fraud and to protect the purity of the ballot. Cooley, Const. Lim. (6th Ed.) pp. 757-8; McCrary on Elections (4th Ed.) § 137; Woodward v. Barbur, 59 Ore. 70, 116 P. 101; State v. Olcott (Ore.) 135 P. 902; Wilson v. Bartlett, 7 Idaho, 271, 62 P. 416; State v. Sullivan (Mo.) 224 S. W. 327; Sayman v. Becker (Mo.) 269 S. W. 973; In re Sullivan (Pa.) 160 Atl. 853; Meffert v. Brown (Ky.) 116 S. W. 779; Pinser v. Sioux City (Iowa) 262 N. W. 551, 100 A. L. R. 1298 (see annotation page 1308).

The case of Ahrens v. Kerby (Ariz) 37 P. (2d) 375, distinguishes itself from the case at bar by reason of tne different constitutional provisions of Arizona.

Neither is the case of King v. State ex rel., 96 Okla. 297, 222 P. 960, nor the case of In re Referendum Petition No. 30, 71 Okla. 91, 175 P. 500, authoritative.

For these reasons, I dissent to that portion of the opinion.

I am authorized to say that Mr. Justice CORN concurs in this dissenting view.