**In re STATE QUESTION NO. 236, REFERENDUM PETITION NO. 73.**

No. 28215.    Sept. 16, 1938.

George Miller, for proponents.

Philip Tocker, Tench Tilghman, and John A. MacDonald, for protestants.

HURST, J.  This is an appeal from an order of the Secretary of State holding Referendum Petition No. 73, State Question No. 236, sufficient to call for a vote of the people.  The Sixteenth Legislature passed an act removing a tax of ten cents per pound on oleomargarine containing certain ingredients, which tax had theretofore been imposed by the Session Laws of 1931.  Before the act went into effect, proponents filed with the Secretary of State the referendum petition in question to place the measure before the voters.  Protestants filed objections to the sufficiency of this petition. Pamphlets were filed purporting to bear the signatures of 56,775 qualified electors.  The number of such signatures required for submission is 37,482.  Protestants therefore must show that 19,264 signatures are invalid in order to defeat the petition.  The Secretary of State held the petition sufficient, and protestants have appealed to this court.  The matter has been referred to a referee of the court for the purpose of taking the testimony, and he has reported findings of fact to the court, which will be hereafter referred to in so far as is necessary to a consideration of protestants' contentions.  The burden of proof was upon the protestants in the hearing before the Secretary of State, and since the trial here is de novo, the burden of proof is also upon them here.  The protests contain many contentions, but we will consider only those presented in the briefs.

Protestants' first contention is that

about 75 per cent. of the signatures are invalid because the affidavits of the circulators of the pamphlets containing such signatures were sworn to before J. C. Patterson and J. W. Moore, notaries public, who were disqualified from acting by reason of their interest in the proceeding. They rely upon the proposition and cite cases to show that officers who are otherwise qualified to take affidavits are rendered incompetent by reason of a financial or beneficial interest in the cause.

Two facts are relied upon to bring this case within the foregoing rule: (1) That the referee found that "J. C Patterson and J. W. Moore supervised and directed the circulation and filing of said pamphlets, and are directly interested and connected with the circulation of said petition"; (2) that the record shows that J. C. Patterson was employed as manager of the Pearsall Butter Company as supervisor of agents distributing oleomargarine in Oklahoma.

As to the first fact set out above, suffice it to say that when directing the circulation of the pamphlets, the notaries were acting in the same capacity as the circulators, and in speaking of this latter group this court, in the case of In re Initiative Petition No. 23, State Question No. 38 (1912) 35 Okla. 49, 127 P. 862, said:

"They are members of the largest legislative body in the state, and, where so acting, do so in a public or at least a quasi public capacity, and when so acting the law presumes the validity and legality of their acts, and even though it should be claimed that they were acting simply in a private capacity, until overcome by proof, their acts, involving the performance of ministerial or administrative duties, such as those performed in the circulation and signing of these petitions, are presumed to be legal and not fraudulent."

It is the second fact set out above, that is, the connection of Patterson with the butter company, which is relied upon to overcome the presumption that the acts of the notaries in question in directing the circulation of the petition were legal. This second fact is also relied upon to show pecuniary interest in J. C. Patterson such as to disqualify him to act as a notary public. We cannot agree that the evidence of his business connection alone is sufficient in itself to show either that his acts as director of circulation were fraudulent or that he was directly financially or beneficially interested in the referendum petition. There is no evidence in the record showing how Patterson would be so interested in this cause nor can we make any such presump-

tion as would disqualify him from notarizing the signatures of the circulators. The assertions that J. W. Moore is interested are not supported by the record.

■ But protestants also contend that the petition is invalid because the circulators of numerous pamphlets, containing signatures which are more than sufficient to defeat the petition if eliminated, did not perform any corporeal act in the administration of the oath before the notaries above referred to whereby they consciously took upon themselves the obligations of an oath. Protestants introduced the testimony of twelve circulators in this connection. It appears from this evidence that the notaries did not require the circulators to hold up their hand to be sworn, nor did they orally administer any formal oath. However, with the exception of circulators Mildred Cowan and Albert Baxter, all appeared at one time or another before the notaries and signed or acknowledged their signatures on the pamphlets. Circulators Cowan and Baxter testified that they sent in some signed pamphlets by mail, but they did not identify the particular pamphlets so mailed nor did they state in particular how many were mailed. For this reason this evidence is not sufficient to invalidate the petition if otherwise sufficient. In any event, the number of signatures on the pamphlets submitted by these two circulators would not be sufficient to affect the result if they are excluded. The notaries admitted that they employed no general procedure in taking the verifications and that they did not require the circulators to hold up their hands and swear that they were telling the truth, but that they told the circulators that they were notaries and asked if they had read the oath. The evidence discloses, and it is conceded in the brief of protestants, that the circulators "intended" to swear to the petitions. In keeping with the progress of the present-day custom and practice prevailing in the transaction of business where an oath is required, it is held that to constitute a valid oath it is not necessary that the affiant hold up his hand and receive a formal oral statement from the officer. It is sufficient if the affiant's attention is called to the fact that his statement is not a mere assertion, but must be sworn to, and that both the affiant and the officer believe that they have done all that was necessary to complete the oath, and that affiant intends to swear to the facts set out in the affidavit. Atwood v. State (1927, Miss.) 111 So. 865. Under this rule, we

think the verifications on the petitions were sufficient.

The Oklahoma cases relied on by protestants in support of this contention do not conflict with this view. In Foster v. Young (1931) 149 Okla. 19, 299 P. 162, it appears that the affidavits there involved were held insufficient because the form and context of the affidavit required by statute was materially changed. The question of the sufficiency of the oath was not before the court and was not considered. Neither is protestants' reference to the case of In re Initiative Petition No. 142, State Question No. 205 (1936) 176 Okla. 155, 55 P.2d 455, wherein it is held that "the fact of nonappearance of the affiant destroys the verification," in point here. As above stated, there is no proof of nonappearance of the affiant as to any particular petition, and under the state of the record we cannot determine which, if any, petitions are thereby destroyed. Our attention is also called to the holding in Re State Question No. 138, Initiative Petition No. 89 (1926) 114 Okla. 285, 244 P. 801, that an initiative petition which is not signed or sworn to by the person who circulated it must be disregarded. There certain signatures were excluded upon proof that those persons did not sign in the presence of the circulator. There is no such contention here, and the question now before us was not there involved.

■ With this view of the contention just discussed, the next proposition urged is decisive of this proceeding. It deals with the sufficiency of the proof of nonregistration of the signers in Oklahoma county. It is conceded that if the protestants' evidence in this regard is not sufficient to rebut the presumption that the signers of such petitions are legally registered voters, then there are not enough signatures in the other counties which protestants claim can be eliminated to defeat the petition. This proof was made in the following manner: Inasmuch as the original pamphlets or petitions cannot be removed from the Secretary of State's office, and the transportation of the registration books is impractical, the petitioners employed one Lucy Ann Manton, who in turn employed certain business college students and prepared a list of the names appearing upon the original pamphlets. This list was then transmitted to the county registrar in Oklahoma county to check against the names appearing in the precinct registration books. He checked the names of the persons who did not appear to be registered.

Evidence was submitted showing that the county registration books were not complete. The list was introduced in evidence and Lucy Ann Manton and the county registrar both testified. The proponents have asserted that a check against the precinct registration book is not sufficient, but that nonregistration must be shown by a check against either the county registration books or the duplicate registration certificates. However, under the view we take of the further contentions of the proponents on this issue, we are not called upon to pass upon that question and to do so would needlessly encumber this opinion with dicta Proponents contend that the Lucy Ann Manton list is not competent evidence sufficient to rebut the presumption of the validity of the signatures. It is now well settled that a nonregistered person may not sign an initiative or referendum petition. In re Initiative Petition No. 142, State Question No. 205, supra. It is equally well settled that the presumption is to be indulged that all signatures upon such petition are legal and that all signers of initiative and referendum petitions are registered, according to law, and in order to strike a signature from such a petition on the ground of nonregistration, the burden is upon protestants to overcome, by competent evidence, the presumption indulged. In re Initiative Petition No 142. State Question No. 205, supra; In re Initiative Petition No. 142, State Question No. 205 (decided September 13, 1938) 183 Okla 343, 82 P.2d 803.

The first question is: Was the list above referred to sufficiently authenticated so as to be competent evidence admissible to rebut the presumption just stated? It cannot be doubted that the original pamphlets or petitions required to be filed in the office of the Secretary of State are public records. Therefore, the list in question is a copy of public records, and in order to render it competent evidence, it must be authenticated according to the ordinary requirements pertaining to the introduction into evidence of such instruments. We know of no reason for making an exception in the case of initiative and referendum petitions.

Section 321, O. S. 1931 (12 Okla. St. Ann. sec 486), provides:

"Copies of all papers authorized or required by law to be filed or recorded in any public office, or of any record required by law to be made or kept in any such office, duly certified by the officer having the legal custody of such paper or record. under his official seal, if he have one. may be received in evidence with the same effect as the original

when such original is not in the possession or under the control of the party desiring to use the same."

Here the list was not certified to by the Secretary of State, the officer in whose custody the original documents were placed. However, the protestants did offer the testimony of Lucy Ann Manton to authenticate the correctness of the list. Greenleaf on Evidence, sec. 484, says: "In short, the rule may be considered settled that every document which there would be inconvenience in removing, and which a party has the right to inspect, may be proved by a duly authenticated copy." And it is further said in section 485 of Greenleaf on Evidence: "Where the proof is by copy, an examined copy, duly made and sworn to by any witness, is always admissible." See, also, Wigmore, Evidence, sec. 1273.

Our statute does not require that the public records sought to be introduced into evidence must in every case be authenticated by the official having custody of the instrument under his official seal. It provides that after a copy of a public record has been so authenticated, it may be introduced into evidence when the original is not in the possession, or under the control of the party desiring to use it. The method of authentication there required is not exclusive. The statute was adopted from Kansas, and it is there held that entries in public records may be proved by examined copies made by persons not having their official custody. State v. Pendleton (Kan. 1903) 72 P. 527; State v. Schaeffer (Kan. 1906) 86 P. 477. However, before the witness not having custody of the records · can render them competent evidence, he must either have made the copy himself, or, if prepared by another, must have carefully checked the other's work. In speaking of such check it has been said:

"The witness qualifying the same must have held the copy as the other read aloud the original, then followed the original while the other read aloud the copy." Wigmore, Evidence, section 1677.

Here the testimony of Lucy Ann Manton was introduced to qualify and authenticate the list. She stated that she hired five or six girls to do the work and told them to be as careful as they could, and if they could not make out the names on the pamphlets, to make them out the best they could. She stated, as to the Oklahoma City list, that she did not do any copying herself, and she also stated that she did not compare all of the signatures copied by the girls with the original pamphlets in order to check the work, but that she compared "some," although she did not know which ones. This evidence must be considered with respect to her testimony that the list was authentic, "considering them all together," and "I think the majority of the list is correct," and that it is "pretty accurate" and "substantially correct." That is the substance of all of the testimony properly pertaining to the authenticity of the list. The girls who did the actual copying did not testify, and although the county registrar, Nash Setzer, stated that the list, when checked against the precinct registration books, was an accurate reflection of the registered and nonregistered voters, yet he did not state that the list was an accurate copy of the signatures as they appeared on the pamphlets. In fact, he was in no position to do this. Although the original pamphlets themselves were also introduced into evidence, yet the proof of nonregistration was founded, not upon a check of the original filed pamphlets against the precinct registration books, but by a check of the copy of the original pamphlets against the precinct registration books in Oklahoma county. Under these circumstances, applying the rule stated above, we find that the copy has not been sufficiently authenticated so as to render it competent evidence sufficient to rebut the presumption that the signers of the petitions were legally registered voters.

However, inasmuch as this point, although vigorously urged before the referee, has not been supported by the citation of authority in the brief of proponent, we have taken the precaution to examine the list submitted, assuming that it is admissible, to determine if it is a reliable and dependable reflection of the signatures on the pamphlets. The referee found "that by reason of the inability to read the signature page of said petition and the ordinary and incidental inaccuracies of typing, said list is not a correct and accurate copy of the names and addresses appearing on the face of the petition," and further "that although check is free from fraud or design on the part of said witness (Nash Setzer), the fact of the incorrect copy of said Lucy Manton list, and due to the further fact that the said witness, Nash Setzer, checked only the names found on the petition (list) and did not check a name similar thereto, that therefore said list is not a correct and accurate indication of whether or not the signer of the petition is a registered voter and qualified to sign said petition." We think the

record supports these findings of the referee. Proponent in cross-examination of witness Manton pointed to 481 errors in the list, when the referee stopped that line of testimony and made a supplemental finding of fact which is as follows:

"The inaccuracies in the Lucy Manton list by reason of inability to read the signatures, and the ordinary and incidental inaccuracies of typing as shown by the evidence in this cause, cover and affect only 481 names so far as witnesses Manton and Setzer show. However, it was stipulated and agreed that proponents might submit a further list showing inaccuracies in the Lucy Ann Manton list which has been filed in this cause, and this finding does not take into consideration such list."

The proponents in their brief refer to the supplemental list which they claim to have prepared showing further inaccuracies in the Lucy Ann Manton list. This supplemental list, however, does not appear in the record, nor has it been formally offered as evidence or qualified, nor any opportunity given to protestants to cross-examine as to it We therefore do not consider it. The protestants urge that the supplemental finding is a finding that there are only 481 errors in the list, and inferentially that the remainder is correct, and contend that such small percentage of errors did not render the list unreliable. However, we do not so interpret the finding of the referee. The list itself, together with the original pamphlets, was examined by the referee as an officer of this court. The errors were not pointed out by handwriting experts, and the referee in making his findings took into consideration his own examination of the list, together with the evidence submitted. Considering all the circumstances stated above, we conclude that the findings of the referee are supported by the evidence. Therefore the protestants have failed to show that the required number of signatures on the pamphlets are those of persons who are not registered voters.

Protestants further contend that the petition is invalid because the same contains the recital, "Shall the following bill passed by the Sixteenth Legislature of the State of Oklahoma be vetoed," rather than the recital, "Shall the act be approved." They rely upon the case of In re Referendum Petition No. 71; State Question No. 216 (1937) 180 Okla. 122, 68 P.2d 424. That case has to do with a ballot title and not the sufficiency of the petition. The statute, section 5867, O. S. 1931 (34 Okla. St. Ann. sec. 1), which prescribes the form of referendum petition, requires that it shall contain the recital, "Shall the following bill of the Legislature be vetoed." This statute was enacted pursuant to the provision of section 5, article 5, of the state Constitution, dealing with initiative and referendum, providing that: "The manner of exercise of said powers shall be prescribed by general laws." Our holding in the cited case, having to do with the ballot title, is based upon the provisions of section 3, article 5, of the Constitution. That section of the Constitution does not deal with the question of the form of the petition. The protestants cite no authority and we have found none that would justify us in holding section 5867, supra, in so far as it prescribes the way the proposition shall be stated in the petition, is unconstitutional. The purpose of the petition is to call for a vote on a bill that has been passed by the Legislature, and the Legislature has thought, by the enactment of said section, that the voters could not be misled by following the form prescribed by the statute. The petition in this case follows the language of the statute and is sufficient.

5. It is unnecessary to consider the remaining contentions of the protestants wherein they seek to eliminate certain signatures from the petition for various reasons, inasmuch as under the views hereinabove set out the elimination of such names would not be sufficient in number to invalidate the petition.

Referendum petition held sufficient.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, GIBSON, and DAVISON, JJ., concur.