434 P.2d 941 (1967)
In re INITIATIVE PETITION NO. 281, STATE QUESTION NO. 441.
David YOUNG, Fred L. Patrick, Suzanne Knock, Jack I. Gaither, and Sylvia Ray, Appellants,
v.
John ROGERS, Secretary of State of the State of Oklahoma, Appellee.
No. 42473.
Supreme Court of Oklahoma.
November 14, 1967.
Paul W. Brightmire, Tulsa, John W. Young, Sapulpa, for appellants.
LeRoy Blackstock, J.C. Joyce, Dwayne C. Pollard, Tulsa, James E. Work, Oklahoma City, for appellee.
*945 LAVENDER, Justice:
This proceeding, expressly based upon the provisions of 34 O.S. 1961 § 8, involves the sufficiency of Initiative Petition No. 281 as filed with the Secretary of State on November 21, 1966, bearing a total of 142,377 signatures. Said initiative petition asks that a proposed amendment to the Constitution of the State of Oklahoma, repealing Article VII thereof and establishing in lieu thereof a new Article VII, relating to the Judicial Department of the state, be submitted to the people of the state for approval or rejection.
Protests against the petition were filed with the Secretary of State by the appellants herein, and others who did not join in this proceeding. After a hearing thereon, the Secretary of State on April 26, 1967, entered his official decision that the initiative petition is in the form required by the statutes of this state and bears an adequate number of signatures. The appellants gave the written "notice of appeal" provided for in Section 8, supra, and filed in this court a document denominated a "petition for appellate review," in which they prayed that this court remand the matter to the Secretary of State for a proper hearing because of alleged errors committed by the Secretary of State, or, in the alternative, that a hearing de novo be had in this court (and the initiative petition be declared insufficient by this court).
Before discussing the various grounds which appellants allege furnish sufficient reasons why this court should declare the petition invalid, we deem it appropriate to consider the above mentioned alternative prayer for relief as contained in appellants' petition for appellate review, that is to say, the prayer that this court remand this cause to the Secretary of State for further proceedings.
Although this court has in fact heard this matter de novo, one of the alternatives prayed for by appellants, the appellants contend that we should remand the proceedings to the Secretary of State because appellants were deprived of a full and complete hearing before that officer by reason of the latter having committed errors in rendering his decision on the question of the sufficiency of the petition.
The proceeding in this court, authorized by 34 O.S. 1961 § 8, is not appellate in character, but is a transference to this court by the Secretary of State of all the papers and documents on file in his office relating to the initiative or referendum petition for an original investigation and hearing de novo. In re Initiative Petition No. 23, State Question No. 38 (1912) 35 Okl. 49, 127 P. 862. In the 1956 case of In re Initiative Petition No. 260, State Question No. 377, Okl., 298 P.2d 753, the Secretary of State held the petition sufficient after stating that the protestant had *946 not filed a proper protest. On "appeal" to this court under the above quoted provisions of 34 O.S. 1961 (then 1951) § 8, the appealing protestant argued that he had been denied a hearing before the Secretary of State, and demanded that the matter be remanded to the Secretary of State for a hearing. In refusing to remand the matter, this court, after stating that the "appeal" to this court is from the final ruling of the Secretary of State for a trial de novo, stated:
"A trial de novo means trial of the entire case anew. Smith v. Bruner's Guardianship, 111 Okl. 93, 238 P. 448, 12 Words and Phrases, De Novo, p. 107. A trial de novo means a complete new trial on both law and fact. On appeal, as here, it would be inconsistent to remand a proceeding back to the Secretary of State to require him to fulfill some duty that he might have omitted to perform. Mandamus, and not appeal, would have been the proper remedy."
and, in the second paragraph of its syllabus, held that the error, if any, made by the Secretary of State in finding the protest insufficient is merged in the proceeding on appeal, and that the protestant is awarded full relief in a trial de novo in this court.
Anyway, the papers and documents transmitted to this court by the Secretary of State in this case disclose that these appellants introduced the depositions of certain witnesses, and entered into a stipulation with the proponents of the initiative petition by which it appears the appellants agreed that the depositions and stipulation constituted all of their evidence with respect to specific signature challenges and challenges to the sufficiency of the petition; further, that the proponents and protestants rested their cases before the Secretary and submitted the matter to the officer for his decision.
The appellants' demand therefore that the matter be remanded to the Secretary of State for that officer to further consider the matter is not well taken.
On July 11, 1967, the people of the State, at an election held for that purpose on that date, approved a proposal by the 1967 Session of the Legislature, contained in its House Joint Resolution No. 508, amending the Oklahoma Constitution by repealing Article VII thereof, and establishing in lieu thereof a new Article VII, relating to the Judicial Department of the State. Shortly thereafter, the appellants filed in this proceeding a motion for summary judgment, nullifying said Initiative Petition No. 281, on the theory that the Article VII of the Constitution that would be repealed under that initiative petition was Article VII as it existed at the time such petition was circulated in 1966, and it was repealed by the people of the state at said election of July 11, 1967, thus rendering Initiative Petition No. 281 wholly ineffective to accomplish the purpose of those who signed such petition. By its order entered herein on September 11, 1967, this court, in effect, overruled such motion for summary judgment, and, as provided in such order, we now set forth our reasons therefor.
We are of the view that the real purpose of an initiative petition is to secure a vote of the people upon a proposed law or constitutional amendment. The repeal of any conflicting provisions of law in effect at the time the proposed law is to become effective is merely incidental to the purpose of such a petition.
The appellants, in their motion for summary judgment and amendment thereto, apparently are of the view that, at least as far as the initiative petition here is concerned, the primary purpose of the same was to repeal the judicial article in the Oklahoma constitution as it existed at some particular time, ostensibly at the time the person signing the petition affixed his signature thereto. We do not believe that such position is well taken
Consequently, we are of the view that the reference to Article VII in the question to be submitted to and voted upon by the people did not in any way affect the question of the sufficiency of the petition *947 before the court. In re Initiative Petition No. 259, State Question 376, Okl. (1957), 316 P.2d 139.
We note that appellants in their amendment to their motion for summary judgment express a "wish to present evidence to prove that the people who validly signed the initiative petition * * * intended only to repeal Article VII * * * as it existed prior to July 11, 1967, * * *." Even if such evidence were admissible, which we do not decide, and assuming that a sufficient number of such persons would so testify so as to reduce the number of valid signatures below the requisite quantity, such evidence would not establish that such persons intended anything other than to secure a vote on the proposed amendment which would, of course, have the effect of repealing any inconsistent constitutional provision, including our present Article VII. We do not believe that such evidence, standing alone, would invalidate the petition before us which has for its clear and well announced primary purpose the establishment of a new judicial department for Oklahoma.
Somewhat along the same line, we note that the immediate purpose of signing the petition was to bring about a vote of the people on the proposed amendment. Such signers do not  by the simple act of placing their signatures on such a petition  indicate that they are in favor, necessarily, of the proposal. They are merely joining with their fellow citizens in the exercise of one of the fundamental rights of free men  to express their desires on the subject in the only way such men can  by voting upon it.
Before discussing appellants' other contentions, we note that in their Proposition V, so designated in their supplemental brief, appellants contend that they were denied due process of law in the hearings before the Secretary of State in that they were not "granted a full and complete hearing."
Appellants point to the fact that the Secretary of State issued a "news release" prior to the date to which he had continued the matter for decision. On the last mentioned date, a formal order was filed and appears in the transcript of the proceedings now in this court. While the issuance of a "news release" under the circumstances may have been somewhat irregular, it is not shown that the parties were prejudiced in any way by such method of proceeding, and we do not deem the same sufficient to amount to a denial of due process.
We have examined the other contentions raised by the Petition for Appellate Review denominated paragraphs (f) through (l), and are unable to agree with appellants that such complaints indicate a denial of due process in the hearings before the Secretary of State. One of the contentions goes to the sufficiency of the evidence; another that the Secretary relied on advice from the Attorney General of the State of Oklahoma; and that the Secretary failed to determine how many valid signatures said petition contained. The record contains a formal "Decision of the Secretary of State" dated the 26th day of April, 1967, in which the following appears:
"I, JOHN ROGERS, Secretary of State of Oklahoma, having examined the above petition, find, and hereby decide, that said petition is in the form required by the statutes of Oklahoma, and that the same contains adequate signatures for me to declare said petition valid and sufficient."
We hold that the findings of the Secretary of State were substantially sufficient to comply with the duty of that officer as provided in the applicable statutes.
Concerning the pre-circulation filing of this initiative petition, the circulation thereof, the signatures thereto, the verification of signatures, and the filing of the signed copies of the petition, the appellants present their argument under five propositions:
(1) That the signed petition was not filed with the Secretary of State within *948 the ninety-day period following the precirculation filing of an unsigned copy of the petition as required by 34 O.S. 1961 § 8;
(2) That the total number of signatures to the petition is less than fifteen per centum of the total number of votes cast at the last general election for the state office receiving the highest number of votes at such election, so that, even if all of the signatures are valid, the petition is insufficient;
(3) That the signatures appearing on the petition were obtained by fraud, deceit and misrepresentation as to what would be accomplished by the petition;
(4) That the circulator's verification of the signatures appearing on the reverse of each sheet of the petition that bears any signatures was not sworn to by some of the circulators, thus invalidating enough signatures to make the petition insufficient;
(5) The petition is invalid because it was circulated and filed by a corporation and a corporation is not a "citizen" within the meaning of that term as used in 34 O.S. 1961 § 8.
The first proposition involves that part of 34 O.S. 1961 § 8 which provides that:
"When a citizen or citizens desire to circulate a petition initiating a proposition of any nature, whether to become a statute law or an amendment to the Constitution, or for the purpose of invoking a referendum upon legislative enactments, such citizen or citizens shall, when such petition is prepared, and before the same is circulated or signed by electors, file a true and exact copy of same in the office of the Secretary of State and, within ninety days after such filing of an initiative petition, the signed copies thereof shall be filed with the Secretary of State, but the signed copies of a referendum petition shall be filed with the Secretary of State within ninety days after the adjournment of the legislature enacting the measure on which the referendum is invoked. Any petition not filed in accordance with this provision shall not be considered. * * *."
The papers and documents transmitted to this court by the Secretary of State show that the signed copies of Initiative Petition No. 281, State Question No. 441, were filed in his office on November 21, 1966, and that an unsigned, exact copy of such petition, bearing no initiative petition number or state question number, had been filed in his office on August 23, 1966, and had been assigned initiative petition number "281" and state question number "441". Although the papers and documents concerning Initiative Petition No. 281 (State Question No. 441) transmitted to this court by the Secretary of State do not so disclose, the appellants contend that an unsigned, exact copy of an identical petition had been filed with the Secretary of State by the same proponents on July 23, 1966. These proponents admit this, but state that the unsigned copy that was filed on July 23, 1966, had been assigned a different initiative petition number and a different state question number by the Secretary of State when it was filed, and that copies bearing those numbers were never circulated for signatures thereto. The appellants do not deny this statement, but, without citing any other authorities on the question, argue that such action on the part of the proponents is contrary to the intent of the framers of the Constitution as indicated by Section 6 of Article V of the Constitution, which provides that "Any measure rejected by the people, through the powers of the initiative and referendum, cannot be again proposed by the initiative within three years thereafter by less than twenty-five per centum of the legal voters." We fail to see that this provision of the constitution has anything to do, either directly or indirectly, with the question presented herein, and we fail to see how the initiative petition involved herein, bearing initiative petition number 281 and state question number 441, can be affected in any way by the filing of a proposed initiative petition *949 that was assigned an entirely different initiative petition number and an entirely different state question number. This first proposition is without merit.
The second proposition involves that portion of Section 2 of Article V of the Oklahoma Constitution which requires that an initiative petition proposing an amendment to the Constitution shall be signed by a number of legal voters equal to at least fifteen per centum of "the total number of votes cast at the last general election for the State office receiving the highest number of votes at such election;" that portion of Section 3 of Article V of the Constitution which provides that "[p]etitions and orders for the initiative and for the referendum shall be filed with the Secretary of State;" and those portions of 34 O.S. 1961 § 8 which provide for the pre-circulation filing with the Secretary of State of an unsigned, exact copy of an initiative petition or referendum petition and for the filing with the Secretary of State, within ninety days thereafter, of the signed copies of an initiative petition.
At the time of the pre-circulation filing of Initiative Petition No. 281 (State Question No. 441), on August 23, 1966, the next preceding general election of state officers had been held in November of 1964, and, if that election is controlling in this instance, 142,400 valid signatures would be required. However, on November 8, 1966, between such pre-circulation filing and the filing of the signed copies of the petition on November 21, 1966, a regular, general election for state offices was held, and, if that election is controlling, 101,589 valid signatures would be required. It is conceded by all parties that a total of 142,377 signatures were appended to the petition as filed on November 21, 1966; that, if no more than 40,788 of such signatures be held to be invalid, the petition would be sufficient insofar as signatures are concerned, if such 1966 election is controlling in this instance, but that, if the 1964 election is the controlling election, the petition would be insufficient even if all of the 142,377 signatures be held to be valid.
The appellants contend that the pre-circulation filing of the unsigned, exact copy of the petition on August 23, 1966, was the "filing" of the petition for the purpose of determining "the last general election" as that term is used in Section 2 of Article V of the Constitution.
Appellants' contention, if correct, would dispose of this matter.
Appellants argue that this court has held "the last general election," as that term is used in § 2 of Article V of the Constitution, means the last general election of state officers preceding both the circulation and the filing of the signed petition. They cite, in support of this theory, In re Initiative Petition No. 272, State Question No. 409, Okl. (1964), 388 P.2d 290, and Shelton v. Lambert et al., Okl. (1965), 399 P.2d 467.
Appellants further state that in any event the general election held on November 8, 1966, was not a "complete" election until the results thereof were officially declared as provided by Article VI, § 5 of the Constitution, which occurred on January 2, 1967. That therefore the November 8, 1966, election could not have been the "last general election" within the meaning of the Constitutional provision as of the date of the filing of the signed petition with the Secretary of State.
Upon Studying In re Initiative Petition No. 272, supra, we find the following statement:
"* * * This number is admitted to equal the percentage of votes required by Art. 5, Sec. 2., supra, and the figure is correctly predicated upon the returns of the general election held in 1960  the general election next preceding the circulation and filing of this petition. * *"
The quoted statement is a part of the court's recital of the facts involved in that case. The issues in the case did not involve two elections. Neither did it involve the problem, as here, of choosing *950 between a general election held prior to the pre-circulation filing of a copy of the petition and the post-circulation filing of a signed petition. The cited case involved the question of whether or not the number of valid signatures to the petition in the case equaled the "number" mentioned. The case is simply not in point.
Shelton et al. v. Lambert et al., supra, involved an initiative petition to amend a city charter. The charter contained no provisions for the amendment of it, and therefore Article XVIII § 4(b) of the Constitution was applicable. This court, citing In re Initiative Petition No. 272, State Question No. 409, supra, and In re Initiative Petition No. 13 of Oklahoma City, Okl. (1962), 369 P.2d 458, did hold that the term "next preceding election," as used in that section of the Constitution, means the general municipal election which next preceded the circulation and filing of the initiative petition.
In the last cited case it had been stipulated by the parties involved that a particular election was in fact the general municipal election which next preceded the circulation and filing of the initiative petition in question therein. This court was not called upon to determine which of two general elections, or even which of two elections of any kind, was "the next preceding election" within the meaning of that term as used in § 4(b) of Article XVIII of the Constitution. We did not determine that question, and the case is not in point.
In In re Initiative Petition No. 13 of Oklahoma City, cited in the Shelton case, supra, a special franchise election had been held in the city involved between a general election of municipal officers and the filing of the initiative petition in question. This court held that the general election, not the intervening special election, controlled in determining the number of signatures required by § 4(b) of Article XVIII of the Constitution. That case is not helpful, although it did involve a choice between two elections as to which was controlling, it did not involve a choice between two general elections as we have in the case before us. The case is not in point.
In support of appellants' contention that the November 8, 1966, election was not "complete" by November 21, 1966, (the date of the filing of the signed petition) protestants cite Gragg v. Dudley (1930), 143 Okl. 281, 289 P. 254, in which case this court did hold that a general election of State officers is not "complete" until each step prescribed in § 5 of Article VI of the Constitution has been carried out. The cited case did not involve an initiative petition. It involved the right of a candidate for lieutenant governor who was at the time of his nomination a member of the senate to hold the former office if nominated and elected. The fact that, for the purpose of a candidate's establishing title to an office, a general election is not "complete" until officially declared as provided by the Constitution or statutes does not mean that such an election cannot be "complete" for any purpose whatsoever.
Section 2 of Article V of the Constitution is not concerned with the names of individuals elected at the "last general election", but is concerned with the total number of votes "cast at" such election for the State office receiving the highest number of votes at such election.
The appellants would have us hold that any initiative petition filed after a general election, but before the election returns are officially declared or certified, must be controlled by the quantum of votes cast, not at such last general election, but by the quantum of votes cast at the general election that preceded it. Such an interpretation would thwart the express intent of the Constitution. The Constitutional language, "shall be based upon the total number of votes cast at the last general election", clearly refers to a specific, definite and unambiguous date. The period necessary for counting, tabulating, certification and declaration of the election returns does not change this election date.
The fact that the names of the various individuals who received the highest number *951 of votes for each State office, or even the exact number that equals the highest number of votes received for any State office, cannot be "officially" determined for some time after the votes to be counted have actually been cast cannot change the fact that the votes involved were cast at a general election on a particular date. If, in fact, the quantum of signatures to an initiative petition is not sufficient to equal fifteen per centum of the total votes cast at the last general election, such fact could, of course, be shown by any protestant of said petition.
It is admitted here that the total number of signatures appearing on the petition is equal to fifteen per centum of the total number of votes cast at the November 8, 1966, election for the State office receiving the highest number of votes at such election.
The appellants contend also that when the true and exact but unsigned copy of the petition was filed on August 23, 1966, the "proceedings were (then) begun" and that § 54 of Article V of the Oklahoma Constitution and cases decided thereunder indicate a "public policy" of Oklahoma which requires us to hold that the subsequent election and filing of petitions containing a number of signatures computed on the later election could not "defeat" or "thwart" the proceedings already "begun."
The cited constitutional provision provides:
"The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute."
We are of the opinion that if there is any "public policy" of Oklahoma indicated by the above quoted provision of the Constitution it pertains to such proceedings as might have begun under a statute which was subsequently repealed during the pendency of such proceedings. A repeal of a statute is not involved in this matter and § 54 of Article V of the Oklahoma Constitution is not applicable here.
The provisions of the Constitution with which we are concerned state in unmistakable language that fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by initiative petition and that:
"* * * The ratio and percentum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the State office receiving the highest number of votes at such election."
Section 3 of the same Article provides that such a petition shall be filed with the Secretary of State and be addressed to the Governor, who shall submit it to a vote of the people
The first rule for construing constitutional provisions, to which all other rules of construction are subordinate, is that the meaning, as understood by those who framed and adopted the Constitution, is to be ascertained and given effect. Wimberly v. Deacon (1943), 195 Okl. 561, 144 P.2d 447.
In Hines v. Winters et al., Okl. (1957), 320 P.2d 1114, this court held:
"* * * This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument."
And in Shaw v. Grumbine (1929), 137 Okl. 95, 278 P. 311, this court held:
"To get at the thought or meaning expressed in a statute, a contract or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning which involves no absurdity, nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted and neither the courts *952 nor the Legislature have the right to add to it or take from it."
In construing a provision of one of the sections of our Constitution which relates to the initiative or to the referendum, it is proper to consider it in connection with related provisions of the other sections of the Constitution relating to the initiative or referendum. Norris et al. v. Cross (1909), 25 Okl. 287, 105 P. 1000; In re Initiative Petition No. 2 of Cushing (1932), 157 Okl. 54, 10 P.2d 271; and Carmichael v. Holmes, et al. (1933), 163 Okl. 27, 20 P.2d 1053.
Guided by the above principles of construction, we are of the opinion that the natural signification of the term "last general election" as employed in the above-quoted portion of § 2 of Article V of the Constitution meant and referred to the most-recent general election as of the filing of an initiative petition which bore the signatures of the requisite percentage of the legal voters of Oklahoma.
The term "last general election" would, we believe, be meaningless in the absence of any reference point concerning the time or event as of which it is to be determined, We believe that that reference point is clearly indicated in the provision of the Constitution wherein it directs that such a petition be filed with the Secretary of State. In making such direction it was certainly not contemplated that the petition when filed would be a "blank" one  that is, one without the signatures of the voters. The filing of a true and exact copy of the petition which was then to be circulated among the voters for their signatures was not the filing of the petition referred to in § 3 of Article V.
We hold that the term "the last general election" for State offices, as used in § 2 of said Article V, is the most-recent general election for State offices as of the date the petition in question is filed with the Secretary of State as provided in § 3 of said Article.
Whether a provision of a Constitution be self-executing or not be self-executing, supplemental legislation facilitating the carrying into effect of the rights secured, and safeguarding the rights against abuses, may be desirable; but such legislation must be in harmony with the spirit of the Constitution and must not curtail the rights reserved or exceed the limitations specified. Associated Industries of Oklahoma et al. v. Oklahoma Tax Commission (1936), 176 Okl. 120, 55 P.2d 79. Therefore, statutes such as 34 O.S. 1961 § 8, supra, enacted for the purpose of carrying into effect the provisions of the Constitution relating to the initiative and referendum powers and rights reserved by the people, and to aid the exercise of such rights, must be construed in harmony with those provisions of the Constitution, not as changing the natural signification of the words used therein.
Consequently, although it is necessary to comply with the provisions of 34 O.S. 1961 § 8, supra, requiring the filing with the Secretary of State of a true and exact copy of the proposed petition before a petition is circulated and signed by the electors, and requiring that the signed copies of an initiative petition be filed with the Secretary of State within ninety days after such pre-circulation filing, those statutory provisions do not change the time or event as of which, according to the Constitution, the question of which general election for state officers is "the last general election" is to be determined for the purpose of computing the number of valid signatures such a petition requires.
Accordingly, we hold that, with respect to the initiative petition involved in this case, the general election for state officers that was held on November 8, 1966, is "the last general election" within the meaning of that term as used in § 2 of Article V of the Constitution.
The third proposition is that the signatures to the petition were obtained by alleged misrepresentations made by the circulators of the petition. Appellants' contention *953 in this regard seems to be adequately answered by In re Initiative Petition No. 142, State Question No. 205 (1936), 176 Okl. 155, 55 P.2d 455. In the cited case the protestants sought to invalidate the signatures to an initiative petition on an allegation that the circulators were instructed to misrepresent the purpose of the proposal set forth in the petition. This court held in the fourth paragraph of its syllabus:
"The court will not interfere with action of electors under the theory that some (of the signers) may have been deceived." (Emphasis added)
It should be noted, even if we assume  which we do not  that one or more of the circulators of the petitions did misrepresent the purpose of the petition and that such was sufficient to vitiate the signature of any person relying thereon, the appellants here have made no offer to prove, by competent evidence, that any particular number or quantity of the signatures to the petition were affected.
This court In re Initiative Petition No. 23, State Question No. 38 (1912), 35 Okl. 49, 127 P. 862, concerning the exercise of the right of the initiative petition had this to say:
"* * * It (the right) can be made effective or defeated by the officers charged with its administration, and it is our duty to sustain it, rather than destroy, if it can be accomplished within the law. The presumption is that petitions which are circulated, signed, and filed are valid. People interested as the circulators of these petitions, and the others who sign them, are acting in the capacity of legislators. They are members of the largest legislative body in the state, and, where so acting, do so in a public or at least a quasi public capacity, and when so acting the law presumes the validity and legality of their acts, and even though it should be claimed that they were acting simply in a private capacity, until overcome by proof, their acts, involving the performance of ministerial or administrative duties, such as those performed in the circulation and signing of these petitions, are presumed to be legal and not fraudulent."
Appellants' third proposition is not well taken.
The fourth proposition constitutes the appellants' principal attack upon the sufficiency of the petition. Insofar as the law is concerned, this attack is based upon this court's holding, in the case of In re State Question No. 138, Initiative Petition No. 89 (1926), 114 Okl. 285, 244 P. 801, that:
"An initiative petition which is not signed or sworn to by the person who circulated said petition does not substantially comply with section 6629 Comp. Stats. 1921 [now 34 O.S. 1961 § 6], and said petition must be disregarded."
and the second paragraph of the court's syllabus to In re State Question No. 236, Referendum Petition No. 73 (1938), 183 Okl. 355, 82 P.2d 1017:
"The oath of a circulator of a referendum petition is sufficient if he appears before a Notary Public and his attention is called to the fact that his statement is not a mere assertion, but must be sworn to, and both the circulator and the officer believe that they have done all that is necessary to complete the oath, and the circulator intends to swear to the facts set out in the affidavit. It is not necessary that the circulator hold up his hand and receive any formal oral statement of an oath from the officer."
This challenge appears to be based upon the testimony, by deposition, of three notaries public whose jurats are affixed to the affidavits of the circulators of several copies of the petition. These copies, according to a stipulation entered into at the hearing before a member of this court, involve a total member of signatures in excess of 41,000. In other words, if this court should find that appellants' fourth proposition is meritorious, then we would be obliged to also find that the petition does *954 not bear a sufficient number of valid signatures.
We have carefully considered the depositions of the witnesses. Additionally, we have considered the stipulation of the parties that if certain witnesses were called they would testify that the notaries public whose jurats are involved performed that function on a total of 1,652 pamphlets, which contained in excess of 41,000 signatures.
It appears from such evidence that while the circulator of each of the mentioned pamphlets (or copies of the petition) personally appeared before the respective notary public and affixed his or her name to the affidavit in the presence of such notary, who thereupon affixed his or her signature and seal thereto, that before the circulator signed the affidavit he was not told by the notary that he was swearing to the truth of the statements contained in such affidavit. It is the failure to so inform the circulator that appellants contend renders all of such pamphlets void and the signatures appearing thereon invalid.
We note, in passing, that the affidavits signed by the circulators were in the exact form prescribed by the applicable statute, 34 O.S. 1961 § 6.
We note that the largest number of signatures involved in other challenges made by the appellants does not exceed 13,486  a number far short of the more than 40,000 required to be shown as invalid before this court could declare the petition insufficient. We have pointed this up so that it may be clear that we are only considering the effect of the challenges made based on the alleged defects in swearing to the pamphlets.
While we agree with the general proposition that all signatures that are not properly verified as provided in 34 O.S. 1961 § 6 must be disregarded, we note that In re Initiative Petition No. 89, State Question No. 138, cited by appellants, involved false affidavits by a circulator. Such case is not in point.
In spite of the statement in the syllabus to In re State Question No. 236, Referendum Petition No. 73, supra, indicating the necessity of the affiant's attention being called to the fact that his statement is not a mere assertion but must be sworn to, in instances where the affiant does not hold up his hand no formal oath is administered, this court upheld the affidavits involved in that case although the body of the opinion discloses that the facts were comparable to the facts in the present case, as disclosed by the following statement concerning the facts (page 1019 of the Pacific report):
"But protestants also contend that the petition is invalid because the circulators of numerous pamphlets containing signatures which are more than sufficient to defeat the petition if eliminated, did not perform any corporeal act in the administration of the oath before the notaries above referred to, whereby they consciously took upon themselves the obligations of an oath. Protestants introduced the testimony of twelve circulators in this connection. It appears from this evidence that the notaries did not require the circulators to hold up their hand to be sworn, nor did they orally administer any formal oath. However, with the exception of circulators Mildred Cowan and Albert Baxter [whose verifications, by themselves, did not involve enough signatures to invalidate the petition], all appeared at one time or another before the notaries and signed or acknowledged their signatures on the pamphlets. * * *" (Emphasis supplied.)
The statement concerning calling the affiant's attention to the fact that his statement is not a mere assertion but must be sworn to was taken from the Mississippi Supreme Court's general discussion concerning oaths in the case of Atwood v. State of Mississippi (1927), 146 Miss. 662, 111 So. 865, 51 A.L.R. 836. That case involved a conviction for the crime of possessing intoxicating liquor that had been seized under a search warrant issued upon the basis of the affidavit under attack therein. The *955 Mississippi court, in holding that there was no error in admitting the evidence seized under such search warrant, upheld the affidavit involved even though the facts surrounding the execution of the affidavit were substantially the same as the facts shown herein. After its general discussion of oaths, the Mississippi court said:
"* * * It is true that some unequivocal act must be done to distinguish between an oath and a bare assertion; an act clothed in such form as to characterize and evidence it as an oath. Was what occurred in the present case between affiant and the justice of the peace such an unequivocal act? We think it was. The affiant went to the justice of the peace for the avowed purpose of obtaining a search warrant, and the justice of the peace knew that he came for that purpose. Both of them knew that an oath was necessary to be administered before the warrant could be issued, and with that knowledge each of them did what he considered proper for the administration of the oath. The affiant, in the presence of the justice of the peace, signed the affidavit; the justice of the peace thereupon affixed his jurat thereto, and issued the search warrant in proper form. Although not a word was said by either in reference to an oath, they both knew an oath was necessary, and both intended that the necessary thing should be done in order to obtain the search warrant. We think, by construction, what occurred amounted to the taking of the necessary oath by the affiant. One may speak as plainly and effectually by his acts and conduct as he can by word of mouth. * * *" (Emphasis supplied.)
In the present case, it is clear that each of the notaries public involved knew that an oath was required not only to make the circulator's signed statement an affidavit but also to give validity to the signatures referred to in the statement, and that each of the circulators involved in this challenge appeared before the notary public involved for the purpose of doing that which was necessary to be done by him or her to give validity to each sheet of signatures obtained by him or her, and, in the absence of evidence to the contrary, we assume that he or she was cognizant of the effect of the statement involved and knew that it was to be a sworn statement. In each instance, the affiant signed the affidavit in the presence of the notary public, and the notary public affixed his jurat thereto. We think that what was done in this case constitutes substantial compliance with 34 O.S. 1961 § 6, which provides that, "Each sheet of every such petition containing signatures shall be verified on the back thereof, in substantially the following form [which, as mentioned above, was used on all sheets of the petition], by the person who circulated said sheet of said petition, by his or her affidavit thereon and as a part thereof."
The fourth proposition is denied.
As disclosed by the appellants' supplemental brief herein, the fifth proposition is bottomed upon the fact that the notice of the filing of the signed petition, given by the Secretary of State as required by 34 O.S. 1961 § 8, stated that the petition had been filed by "LeRoy Blackstock et al. on behalf of Judicial Reform, Inc." In connection with this matter the parties stipulated at the hearing before the Secretary of State, that the latter's predecessor, who was the Secretary of State at the time of the filing of the petition would testify if called as a witness, that it was his understanding, from talking to the three individuals who presented the petition for filing, at the time they filed the petition, that the petition was being filed on behalf of Judicial Reform, Inc. In the case of In re State Question No. 138, Initiative Petition No. 89 (1926), 114 Okl. 285, 244 P. 801 (Cited by the appellants in connection with the fourth proposition), the copy of the proposed petition when filed with the Secretary of State prior to circulation for signatures, bore the endorsement, "Prepared and filed by the State Taxpayers' Association, Campbell Russell, Secretary, Bristol Hotel, Oklahoma City," and it was argued *956 by the protestant-appellants, as here, that such an association, not being a "citizen" within the contemplation of the statute that now appears as 34 O.S. 1961 § 8, had no legal authority to put the initiative machinery into operation for the purpose of presenting the question under consideration to the voters of the state. This court said that the cases cited by the appellants would support a contention that no one except a citizen  a citizen as distinguished from a firm, organization, society or partnership  has a right to sign an initiative petition, but that, in that case, the copy of the petition filed with the Secretary of State substantially complied with the statute that now appears as 34 O.S. 1961 § 8, defining what is necessary to set the initiative machinery of this state in motion, and such endorsement was not required by law and was therefore surplusage. In the present case, the signed petition, as filed with the Secretary of State, substantially complied, if not fully complied, with all of the requirements of law defining what is necessary to set the initiative machinery of the state in motion. We notice that the letter accompanying the signed petition when filed with the Secretary of State is signed by three individuals; and that the letter accompanying the unsigned copy of such petition when it was filed with the Secretary of State prior to circulation of the petition for signatures, was also signed by the same three individuals. These are the same persons mentioned in the stipulation involved in this proposition. Whether or not the Secretary of State was justified, because of his conversation with those individuals at the time they filed the signed petition with him, in stating in the notice of the filing of such petition that the petition was filed by such individuals on behalf of some corporation, we think that such mention of a corporation in such notice was surplusage and cannot affect the validity of the petition. Furthermore, the fact that some corporation may have had some part in the procedure leading up to the filing of the signed petition with the Secretary of State cannot deprive the people of their right, reserved by them in Section 1 of Article V of the Constitution, to enact or to reject, at the polls, the amendment to the Constitution, proposed in the manner prescribed in Sections 2 and 3 of Article V of the Constitution and in substantial compliance with the statutes involved.
Initiative Petition No. 281 (State Question No. 441) hereby is declared to be in the form required by the statutes of this state and to be signed by an adequate number of legal voters of this state to constitute it a valid initiative petition. The papers and documents relating to such initiative petition, transmitted to this court by the Secretary of State, shall be returned to the Secretary of State with directions to proceed in accordance with the applicable statutes.
JACKSON, C.J., IRWIN, V.C.J., and DAVISON, WILLIAMS, BERRY and HODGES, JJ., concur.
BLACKBIRD, J., concurs in result.