Dear Ken Miller:
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. What is the definition of Oklahoma Tobacco SettlementEndowment Trust Fund "earnings" that shall be considered in theannual certification by the Board of Investors?
 2. Is there a conflict between the constitutional language(Okla. Const. art. X, § 40) and statutory language(62 O.S.Supp. 2010, § 2307[62-2307]) with regard to the components to beincluded in "earnings" for the annual certification of earnings fromthe trust fund that the Board of Investors of the Oklahoma TobaccoSettlement Endowment Trust Fund is directed to perform?
 3. Can the Board of Investors impose a cap on the amount ofOklahoma Tobacco Settlement Endowment Trust Fund earnings annuallycertified, assuming it would be in the exercise of ordinary businesscare, prudent to do so, and in keeping with the Board of Investor'sfiduciary responsibility?
 4. Should it be determined the constitutional and statutorylanguage governing the Oklahoma Tobacco Settlement Endowment Trustprohibit imposition of a certification cap by the Board ofInvestors, would it be permissible for the Board of Directors torestrict or limit annual expenditures to protect the corpus of theOklahoma Tobacco Settlement Endowment Trust Fund?
¶ 1 In 2000, the citizens of the State of Oklahoma voted to create the Tobacco Settlement Endowment Trust Fund ("Trust Fund").See https://www.sos.ok.gov/documents/questions/692.pdf (codified at Okla. Const. art. X, § 40). The Trust Fund includes revenues received by the State of Oklahoma from settlements with or judgments against tobacco companies. Okla. Const. art. X, § 40(A).
¶ 2 The Constitution creates a Board of Investors and a Board of Directors for the Trust Fund, and prescribes duties for each Board. Okla. Const. art. X, § 40(C), (D). The Constitution tasks the Board of Investors with the duty of investing of monies in the Trust Fund to generate earnings, subject to certain restrictions and limitations. Okla. Const. art. X, § 40(C). The Constitution vests the authority to spend the Trust Fund earnings with the Board of Directors. Okla. Const. art. X, § 40(F).
¶ 3 Subsection 40(G) of Article X of the Oklahoma Constitution specifically grants the Legislature the authority to enact legislation to implement that constitutional provision. In 2001, the Oklahoma Legislature enacted the Tobacco Settlement Endowment Trust Fund Act ("Act") to implement the constitutional provision.See
2001 Okla. Sess. Laws ch. 274, §§ 1 — 10 (codified at 62 O.S. 2001, §§ 2301[62-2301] — 2310). The Act compels the Board of Investors to annually determine the earnings of the Trust Fund for the previous fiscal year ending June 30 (62 O.S. Supp. 2010, § 2307[62-2307](A)), and certify an amount which is prudent under the standard set forth in subsection C of Section 2307 for the Board of Directors to spend.[1]
¶ 4 You first ask what is the definition of "earnings" that shall be considered in the annual certification by the Board of Investors. The Constitution does not define earnings, but sets forth an incomplete list of items that is included in earnings, as follows:
 E. Earnings from the trust fund, including but not limited to interest, dividends, and realized capital gains from investments of the trust fund shall be expended as provided in subsection F[2] of this section for the [specified] purposes[.]
Okla. Const. art. X, § 40(E) (emphasis added) (footnote added).
¶ 5 "A constitutional provision is to be applied to give effect to the intent of the people voting on it." In re Protest Against theTax Levy, 959 P.2d 580, 582 (Okla. 1998). "[T]he provisions of a Constitution are construed using the usual rules of statutory construction." Cowart v. Piper Aircraft Corp.,665 P.2d 315, 317 (Okla. 1983).
¶ 6 Because earnings are not defined in the Constitution, we must assume the people voting on the constitutional provision, which created the Trust Fund and allowed the expenditure of earnings which accrue to the Trust Fund, intended for the word earnings "to have the same meaning as that attributed to them in ordinary and usual parlance." Riffe Petroleum Co. v. Great Nat'l Corp.,614 P.2d 576, 579 (Okla. 1980). The ordinary meaning of earnings is:
 [T]he balance of revenue for a specific period that remains after deducting related costs and expenses incurred — compare profit[.]
Webster's Third New International Dictionary 714 (3d ed. 1993).
¶ 7 The ordinary meaning of profit as that term is used in the definition of earnings is:
 (1) : net income (as in a business) usu. for a given period of time (2) : a benefit or advantage accruing from the management, use, or sale of property, from the carrying on of any process of production, or from the conduct of business[.]
Id. at 1811.
¶ 8 The ordinary meaning of net income as that term is used in the definition of profit is:
 [T]he balance of gross income remaining after deducting related costs and expenses usu. for a given period and losses allocable to the period[.]
Id. at 1520.
¶ 9 Building on the ordinary meanings of net income, profit and earnings, Trust Fund earnings as used in Okla. Const. art. X, § 40 means the income generated from the Trust Fund, including, but not limited to, interest, dividends and realized capital gains from investments, minus costs and expenses of investment, and minus any losses realized by the Trust Fund.
 The Statutory Definition of Trust Fund Earnings Conflicts With the Meaning of Earnings as That Term is Used in the Constitution.
¶ 10 We have said earnings, as that term is used in the constitutional provision allowing for expenditure of Trust Fund earnings, refers to the income generated from the Trust Fund, including but not limited to interest, dividends and realized capital gains, minus the costs and expenses of investment, and minus any losses realized by the Trust Fund. The Act's definition of earnings is more limited than the meaning of earnings used in the Constitution. The Act states, "`Earnings' consist of dividends and interest, less fees to manage the fund." 62 O.S.Supp. 2010, § 2307[62-2307](B). The only revenue the Act includes in earnings is dividends and interest. However, the Constitution specifically provides that earnings includes, but is not limited to, "interest, dividends, and realized capitalgains from investments of the trust fund." Okla. Const. art. X, § 40(E) (emphasis added). In addition, we have recognized realized losses, and the costs and expenses of investments must be deducted from Trust Fund income to arrive at earnings.
¶ 11 In case of an irreconcilable conflict between a statute and provision in the State Constitution on the same subject, the constitutional provision must prevail. The State Constitution is the supreme law of the State. Ex parte Hunnicutt,123 P. 179, 184 (Okla. Crim. App. 1912).
¶ 12 Where the Constitution provides that Trust Fund earnings shall include realized capital gains, the Legislature cannot simply, through legislation, eliminate this component of earnings from consideration. The Constitution does not purport to include an exhaustive list of components that must be considered to arrive at Trust Fund earnings. The Constitution leaves room for the Legislature to add, through legislation, additional items to be considered in the calculation of earnings, but the Legislature can not eliminate a component of earnings that is mandated in the Constitution.
¶ 13 Because the definition of Trust Fund earnings found in 62 O.S.Supp. 2010, § 2307[62-2307](B), is in irreconcilable conflict with the meaning of earnings found in Okla. Const. art. X, § 40, in that the statutory definition does not include realized capital gains as part of earnings, the statutory definition of Trust Fund earnings found in 62 O.S.Supp. 2010, § 2307[62-2307](B) is unconstitutional.[3] Earnings, for the annual certification of earnings by the Board of Investors, are the income generated from the Trust Fund, including, but not limited to, interest, dividends, and realized capital gains from investments, minus costs and expenses of investment, and minus any losses realized by the Trust Fund.
 The Board of Investors of the Trust Fund Can Not Imposea Cap on the Amount of Trust Fund Earnings AnnuallyCertified.
¶ 14 The Act requires the Board of Investors to annually certify Trust Fund earnings available to the Board of Directors for expenditure. 62 O.S.Supp. 2010, § 2307[62-2307](A). We recognize from your third question that you believe it may be prudent, and in keeping with the Board of Investor's fiduciary responsibility, to impose a cap on the amount of Trust Fund earnings annually certified.
¶ 15 Section 40(G) of Article X of the Constitution authorizes the Legislature to enact legislation to implement that constitutional provision. The Act is to "further implement the provisions of Section 40 of Article X of the Oklahoma Constitution." 62 O.S. 2001, § 2302[62-2302]. In implementing constitutional provisions, the Oklahoma Supreme Court has said:
 [S]upplemental legislation facilitating the carrying into effect of the rights secured [by the Constitution], and safeguarding the rights against abuses, may be desirable; but such legislation must be in harmony with the spirit of the Constitution and must not curtail the rights reserved or exceed the limitations specified.
In re Initiative Petition No. 281 v. Rogers,434 P.2d 941, 952 (Okla. 1967). See also, Bd. of Regents v.Baker, 638 P.2d 464, 466 (Okla. 1981) (stating the Legislature's power "may be restricted and limited by constitutional provisions").
¶ 16 The Act, with its supplemental provisions, appropriately provides for the Board of Investors to annually certify the amount of Trust Fund earnings for expenditure by the Board of Directors. However, as we discussed in response to your first two questions, the earnings that are certified can not deviate from that contemplated by Okla. Const. art. X, § 40, which is the income generated from the Trust Fund, including but not limited to interest, dividends and realized capital gains from investments, minus the costs and expenses of investment, and minus any losses realized by the Trust Fund. Similarly, the Board of Investors can not impose a cap on the amount of Trust Fund earnings it certifies for expenditure by the Board of Directors. Although a cap on Trust Fund earnings certified by the Board of Investors may be prudent and desirable, it is not in "harmony with the spirit of the Constitution," (In re Initiative Petition No. 281,434 P.2d at 952) in that the Constitution provides the Trust Fund "Board of Directors may expend the amount of earnings which actually [accrue] to the trust fund." Okla. Const. art. X, § 40(F). Consequently, neither the Legislature nor the Board of Investors can impose a cap on Trust Fund earnings that is less than the income generated from the Trust Fund, including, but not limited to, interest, dividends and realized capital gains from investments, less the costs and expenses of investment and any losses realized by the Trust Fund.[4]
 The Board of Directors Can Restrict Annual Expenditures to Protect the Corpus of the TrustFund.
¶ 17 You last ask if the Board of Directors can restrict the amount of earnings they expend in order to protect the corpus of the Trust Fund. In order to answer your question, we look to subsection F of Okla. Const. art. X, § 40, which authorizes the Board of Directors to expend the earnings which accrue to the Trust Fund, providing:
 F. Each fiscal year, the Board of Directors may expend the amount of earnings which actually accrued to the trust fund during the preceding fiscal year. Any amount not so expended shall remain in the trust fund. The Board shall direct specific expenditures to be made for the purposes specified in subsection E of this section.
Id. (emphasis added.)
¶ 18 "A constitutional provision is to be applied to give effect to the intent of the people voting on it." In re Protest Againstthe Tax Levy, 959 P.2d at 582. Subsection F of Okla. Const. art. X, § 40 is unambiguous and clearly indicates the intent of the people voting on it.
¶ 19 Subsection F expressly provides that the Board of Directorsmay expend Trust Fund earnings. "The word May usually is employed to imply permissive or discretional, and not mandatory, action or conduct." Shea v. Shea,537 P.2d 417, 418 (Okla. 1975) (emphasis added). The voters' intent that the Board of Directors may exercise discretion in how much of the Trust Fund earnings they expend is further indicated by the language that provides for any earnings not expended by the Board of Directors to remain in the Trust Fund. Because Okla. Const. art. X, § 40(F) gives the Board of Directors discretion in determining how much of the Trust Fund earnings they will spend, the Board of Directors may restrict the amount of earnings they spend in order to protect the corpus of the Trust Fund.
¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Tobacco Settlement Endowment Trust Fund ("Trust Fund") earnings are equal to the income generated from the Trust Fund, including but not limited to interest, dividends and realized capital gains from investments, minus the costs and expenses of investment and minus any losses realized by the Trust Fund.
 2. The definition of Trust Fund earnings found in 62 O.S.Supp. 2010, § 2307[62-2307](B) is in irreconcilable conflict with the meaning of earnings in Okla. Const. art. X, § 40, in that the statutory definition does not include realized capital gains as part of earnings; therefore, the statutory definition of Trust Fund earnings found in 62 O.S.Supp. 2010, § 2307[62-2307](B) is unconstitutional. An Attorney General's Opinion stating that an act of the Legislature is unconstitutional is advisory only and not binding on a state official. State ex rel. York v. Turpen, 681 P.2d 763, 767 (Okla. 1984). Only a court of competent jurisdiction can issue a binding opinion that a legislative act is unconstitutional. Id.
 3. Because the annual Trust Fund earnings that are certified by the Board of Investors can not deviate from that contemplated by Okla. Const. art. X, § 40, neither the Legislature nor the Board of Investors can impose a cap on Trust Fund earnings that is less than the income generated from the Trust Fund, including, but not limited to, interest, dividends and realized capital gains from investments, minus the costs and expenses of investment, and minus any losses realized by the Trust Fund.
 4. Because Okla. Const. art. X, § 40(F) gives the Board of Directors discretion in determining how much of the Trust Fund earnings they will spend each year, the Board of Directors may restrict the amount of earnings they spend in order to protect the corpus of the Trust Fund.
E. SCOTT PRUITT Attorney General of Oklahoma
JANIS W. PRESLAR Assistant Attorney General
[1] Subsection 2307(C) of Title 62 provides:
 C. In the administration of the powers to determine earnings, to make and retain investments, and to delegate investment management of institutional funds, the Board of Investors shall exercise ordinary business care and prudence under the facts and circumstances prevailing at the time of the action or decision. In so doing, the Board of Investors shall consider:
 1. Long-and short-term needs of the trust fund in carrying out its purposes;
 2. The present and anticipated financial requirements for programs funded by the Board of Directors of the Tobacco Settlement Endowment Trust Fund;
 3. Expected total return on its investments;
 4. Price level and inflation trends; and
 5. General economic conditions.
Id.
[2] Subsection F of Okla. Const. art. X, § 40, provides that the Board of Directors of the Trust Fund "may expend the amount of earnings which actually accrued to the trust fund during the preceding fiscal year." Id.
[3] An Attorney General's Opinion stating that an act of the Legislature is unconstitutional is advisory only and not binding on a state official. State ex rel. York v. Turpen,681 P.2d 763, 767 (Okla. 1984). Only a court of competent jurisdiction can issue a binding opinion that a legislative act is unconstitutional. Id.
[4] We note there was previously an attempt to impose a cap on the Trust Fund earnings annually certified by the Board of Investors, but that attempt failed. In 2002 the Legislature passed House Joint Resolution 1036 ("H.J.R. 1036"). 2002 Okla. Sess. Laws p. 2568, available at
https://www.sos.ok.gov/documents/ questions/701.pdf. H.J.R. 1036 directed the Secretary of State to refer to the people for their approval or rejection a proposed amendment to Section 40 of Article X of the Constitution to set an annual limit on expenditures of the Trust Fund "not to exceed 5 ½ percent of the average market value of the fund." Id. § 2. The proposed amendment also provided that "[t]he actual percentage amount to be expended is set by the Board of Investors." Id. The proposed amendment was designated by the Secretary of State as State Question 701. An election on State Question 701 was held on November 5, 2002. See 2003 Okla. Sess. Laws p. 2455,available at https://www.sos.ok.gov/gov/questions.aspx. The State Question failed by a vote of 425,717 "yes" votes to 518,280 "no" votes. Id. *Page 1